[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12946

_____

AMBER JACKSON,

                                                      Plaintiff-Appellee,

*versus*

CITY OF ATLANTA, GEORGIA,
CODY SWANGER,
in his individual capacity,
JEREMIAH BRANDT,
in his individual capacity,

                                                      Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-02578-MHC

———————————

Before WILLIAM PRYOR, Chief Judge, ABUDU, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

This is an attempted interlocutory appeal by Atlanta police officers Cody Swanger and Jeremiah Brandt from the district court's failure to dismiss on qualified immunity grounds two of Amber Jackson's claims against them.

One of the claims Jackson brought in her 42 U.S.C. § 1983 complaint against the officers is that they violated her constitutional rights by seizing her "without actual or arguable reasonable suspicion and/or probable cause." Another claim is that Brandt violated Jackson's constitutional rights by failing to intervene in Swanger's use of excessive force in making the seizure. As part of their appeal, the officers contend that in the course of reaching its decision against them the district court abused its discretion by refusing to consider some of the video footage of the incident giving rise to the claims against them that was hyperlinked in their motion to dismiss.

Because we lack jurisdiction at this stage of the proceedings to review the district court's discretionary ruling not to consider that video footage, we dismiss that part of the officers' appeal. We

do have jurisdiction to review the denial of qualified immunity on the unlawful seizure claim against both officers and the failure to intervene claim against Brandt. For reasons we will explain, we will affirm the denial of the officers' motion to dismiss the unlawful seizure claim, but we will vacate the denial of Brandt's motion to dismiss the failure to intervene claim and remand with instructions for the district court to dismiss that claim.

## I. Background Facts and Procedural History

These facts are drawn from Jackson's first amended complaint, which is the operative one, and from the part of the video evidence hyperlinked in the officers' motion to dismiss that the district court did consider when reviewing the pleadings.

In late May of 2020 Jackson and her fiancé participated in a peaceful protest in downtown Atlanta in response to the death of George Floyd in Minneapolis a few days earlier. Later that night, at about 1:00 a.m., the couple went to Atlanta's Lenox Square Mall in the hope of joining a peaceful protest there. They drove into the mall's parking lot but were unable to find any fellow protestors, so they decided to head home.

Attempting to leave the parking lot through a different entrance than the one they had used to enter the mall area, Jackson and her fiancé (who was driving) encountered a barricade. There were no law enforcement officers present at the exit and no sign prohibiting the relocation of the barricade. Jackson got out of the vehicle, moved the barricade a few feet so that their car could pass, and got back into the passenger's seat.

Before the couple could leave the parking lot, Officers Brandt and Swanger in an Atlanta Police Department patrol car pulled up behind their vehicle. Brandt approached Jackson's fiancé on the driver's side of the vehicle, and Swanger approached Jackson on the passenger's side. Swanger pointed his firearm at Jackson and shouted at her to "[g]et out of the fucking car." Before she could comply with his command, Swanger pulled Jackson out of the vehicle and onto her knees, placed his arm around her neck, lifted her off the ground, and "body slam[med]" her into the pavement. The impact broke Jackson's right clavicle.

Swanger then turned Jackson over on her stomach, handcuffed her, got her to her feet, and pushed her toward the patrol vehicle while calling her "stupid." Jackson and her fiancé remained handcuffed in the back of the vehicle for nearly an hour.

Based on these allegations, Jackson asserted three constitutional claims against the officers under 42 U.S.C. § 1983: unlawful seizure in violation of the Fourth and Fourteenth Amendments, against both Swanger and Brandt; excessive use of force in violation of the Fourth Amendment, against Swanger; and failure to intervene to stop Swanger's excessive use of force in violation of the Fourth Amendment, against Brandt. The unlawful seizure claim was based on allegations that the officers lacked reasonable suspicion, much less probable cause. Jackson brought related claims against the City of Atlanta for having a custom or policy of using excessive force and for failing to train or supervise its police officers.

She also brought state-law claims against the officers, along with derivative claims for punitive damages and attorney's fees.

Swanger and Brandt jointly moved to dismiss the amended complaint for failure to state a claim. Among other things, they contended that they were entitled to qualified immunity on Jackson's unlawful seizure, excessive force, and failure to intervene claims. As exhibits to their motion to dismiss, the officers included hyperlinks to four video recordings: (1) one from Swanger's body camera; (2) one from Brandt's body camera (which was not turned on until after the seizure); (3) one from the dash camera on their patrol car video; and (4) one they titled "Bystander/Spliced BWC [body-worn camera] Video." They asserted that the fourth video recording was a combination of footage that a bystander took spliced with footage from Swanger's body camera video ("the spliced video"). Unlike the motion to dismiss, the amended complaint did not contain any hyperlinks. But the amended complaint did reference one of the officers' video exhibits: Swanger's body camera video.

On the unlawful seizure claim, Swanger and Brandt asserted in their motion to dismiss that they had reasonable suspicion to stop the vehicle in which Jackson was riding, and that they also had probable cause to arrest her. The officers also asserted that some footage from Swanger's body camera video showed that, after he had removed Jackson from the car and before he "took her . . . to the ground," Jackson had taken multiple steps away from him and toward the road. Based on that, the officers argued that Jackson

had attempted to flee, giving Swanger probable cause to arrest her and justifying the force that he had used to make the arrest.

In ruling on the motion to dismiss, the district court considered not only the pleadings but also some — only some — of the footage from Swanger's body camera that was hyperlinked in the motion. The court stated that it was permitted to consider an exhibit attached to a motion to dismiss without converting that motion to one for summary judgment where the exhibit was "central to the plaintiff's claim" and where its "authenticity [was] unchallenged." *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (explaining that a district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed[,] . . . mean[ing] that the authenticity of the document is not challenged").

In the district court's view, however, the footage from Swanger's body camera video that it considered did not resolve all of the issues in the officers' favor. On Jackson's seizure claim, the court noted that, "aside from showing that Jackson attempted to move away from Swanger after she was pulled out of the vehicle, Swanger's Body Cam footage fails to clearly indicate what happened prior to Swanger taking Jackson to the ground." The court disagreed with the officers' assertion that it could "definitively conclude from watching the footage that Jackson 'ran' in an attempt to evade the officers or 'dragged' or 'struggled to pull away from' Swanger."

The court relied on Swanger's body camera video only to make three findings. First, there was nothing to indicate any criminal activity connected to the mall or the car. Second, after Swanger had pulled Jackson from the car, she also "took several steps towards the road and away from [him]." And third, within about three minutes after the arrest, an ambulance was "apparently . . . called to the scene."

Swanger and Brandt had requested that the court consider other parts of Swanger's body camera footage showing Swanger walking around the area more than four minutes after the arrest and capturing comments he made to Jackson and her fiancé while they sat detained in the police vehicle. The court declined to consider any of that footage because the recorded events were not "central to the Amended Complaint," making consideration of it inappropriate at the motion to dismiss stage. Some other footage the officers unsuccessfully requested the court to consider happened more than a half hour after the seizure.

The district court also declined to consider any of the spliced video that Swanger and Brandt had hyperlinked in their motion to dismiss. It did so after deciding that particular video exhibit was "not authenticated" and "lack[ed] the same credibility as the police officer's body cam footage."

The court denied the officers' motion to dismiss the unlawful seizure claim. It concluded that on the facts alleged, the officers "had no articulable basis to conduct a traffic stop on Jackson's vehicle or otherwise detain Jackson." According to the court,

qualified immunity was not available because "a reasonable police officer would have known that he lacked reasonable suspicion for stopping Plaintiff and that he was violating clearly established law in doing so." Having denied the officers' motion to dismiss the unlawful seizure claim based on the absence of reasonable suspicion under clearly established law, the court did not reach the probable cause issue. But given that probable cause is a more demanding standard than reasonable suspicion, the absence of reasonable suspicion necessarily rules out probable cause.

The court dismissed the excessive force claim against Swanger as derivative of the unlawful seizure claim and, therefore, redundant in light of that claim. *See Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006) ("[I]f an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest."); *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) ("[A] claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim . . . .").[1]

---

[1] We do not mean to imply that it is proper to dismiss before trial an excessive force claim as redundant to another claim that the jury may end up rejecting at trial. *See Bashir*, 445 F.3d at 1332 (explaining that a claim that officers "used excessive force in the arrest because they lacked the right to make the arrest . . . is dependent upon and inseparable from [an] unlawful arrest claim," while "an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest"); *Jackson*, 206 F.3d at 1171 (explaining that "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive

But the court denied qualified immunity to Brandt on Jackson's related claim that Brandt had failed to intervene in Swanger's use of excessive force. (There was no excessive force claim against Brandt himself.) The court also declined to dismiss the claims for punitive damages and attorney's fees that were derivative of Jackson's surviving constitutional claims. It did, however, address the merits of the state-law claims and the claims that were derivative of them, and it dismissed those claims with prejudice. The dismissal of those claims is not before us in this appeal.[2]

Swanger and Brandt jointly appeal the denial of qualified immunity on the unlawful seizure claim against both of them and on the failure to intervene claim against Brandt, including the district court's ruling that it would not consider some of the various videos or footage that captured the events and the aftermath, such as Swanger's comments to Jackson and her fiancé.

Jackson moves to dismiss the officers' appeal for lack of appellate jurisdiction and alternatively argues that their arguments on the merits lack merit.

## II. Standard of Review

---

force claim," but that "a claim for excessive force during a legal stop or arrest is a discrete claim"). But we do not have jurisdiction to decide that issue in this interlocutory appeal by Swanger and Brandt, when Jackson is the party who had the excessive force claim dismissed as redundant.

[2] The City also filed a motion to dismiss the claims against it, which the district court granted. That dismissal is not before us, and the City is not a party in this appeal.

To defeat a qualified immunity defense on a motion to dismiss, the operative complaint must plausibly plead that the defendant violated the plaintiff's federal rights and those rights were clearly established. *See Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016).[3] We review the district court's judgment *de novo* to determine whether the complaint alleges a violation of clearly established law, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *See Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).

When assessing the sufficiency of a complaint on a motion to dismiss, a district court has some "discretion" to decide whether to consider "matters outside of the pleadings." *Jones v. Auto. Ins. Co. of Hartford*, 917 F.2d 1528, 1531–32 (11th Cir. 1990); *see also Day*, 400 F.3d at 1276 (explaining that a district court "*may* consider a document attached to a motion to dismiss without converting the motion into one for summary judgment") (emphasis added). Extrinsic material that is referred to in the operative complaint and attached to a motion to dismiss may be considered by the court at the pleading stage if the attached material "(1) central to the plaintiff's claim" and (2) "the authenticity of the document is not challenged." *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002).

---

[3] To assert a qualified immunity defense, the defendant must be acting in a discretionary capacity. *See Carollo*, 833 F.3d at 1328. Jackson does not dispute that the district court correctly determined that Brandt and Swanger were acting in their discretionary capacities.

When a district court, within its discretion, has properly considered materials outside the pleadings as part of its review of the operative complaint, we may consider those same extrinsic materials on appeal. *See Baker v. City of Madison*, 67 F.4th 1268, 1277–78 (11th Cir. 2023) (concluding that "the district court properly considered [a defendant officer's] body camera footage . . . when ruling on the motions to dismiss" and taking into account that same footage when reviewing the pleadings *de novo*); *Day*, 400 F.3d at 1276–78 (explaining that "we may consider" an external, undisputed document central to the plaintiff's claims that is attached to a motion to dismiss, and taking into account an external document that the district court chose to consider when reviewing the sufficiency of the complaint on appeal).

When we review video footage at the motion to dismiss stage, we "must construe all ambiguities in the video footage in favor of the plaintiff." *Baker*, 67 F.4th at 1277. "[W]here [the] video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account, and [we] view the facts in the light depicted by the video." *Id.* at 1277–78 (internal citations omitted).

Before we apply these principles and review the district court's partial denial of the officers' motion to dismiss, we must determine whether we have jurisdiction over their appeal.

## III. Jurisdiction Under the Collateral Order Doctrine

"We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for 'without jurisdiction we cannot

12                    Opinion of the Court                    22-12946

proceed at all in any cause.'" *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)).

Swanger and Brandt contend that we have jurisdiction under 28 U.S.C. § 1291. That statute provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291.

Generally, a statute allowing for review of "final decisions" does not vest us with jurisdiction to consider the denial of a motion to dismiss. *See Carollo*, 833 F.3d at 1327 ("[A] district court's denial of a motion to dismiss ordinarily is not a 'final decision.'") (alteration adopted). But under the collateral order doctrine, a party may immediately appeal an order under 28 U.S.C. § 1291 before final judgment if that order satisfies three conditions. *See SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1278 (11th Cir. 2021) (en banc). "The 'order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

A district court's denial of qualified immunity on a motion to dismiss "can fall within the narrow class of appealable orders" covered by the collateral order doctrine, "[p]rovided [the denial] 'turns on an issue of law.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985)). Issues

of law include the question of "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996) (quoting *Mitchell*, 472 U.S. at 528). That is a "core qualified immunity issue[]." *Id.* (quotation marks omitted).

So it follows that the question of whether a complaint states a violation of clearly established law sufficient to overcome a qualified immunity defense does present an abstract issue of law reviewable under 28 U.S.C. § 1291. *See Iqbal*, 556 U.S. at 671–74; *Piazza v. Jefferson County*, 923 F.3d 947, 951 n.5 (11th Cir. 2019) ("We have jurisdiction over the officers' interlocutory appeal under 28 U.S.C. § 1291 because the district court denied qualified immunity [on a motion to dismiss] based on questions of law — namely, whether the officers violated . . . constitutional rights and whether those rights were clearly established."); *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) ("This Court's appellate jurisdiction in matters challenging the denial of qualified immunity in a motion to dismiss extends only to the legal issues surrounding the district court's denial of [defendants'] motions to dismiss, *i.e.,* issues concerning whether [the operative] complaint sufficiently alleged the violation of a clearly established right.") (quotation marks omitted). That's because when a district court, "in ruling on . . . [a] motion[] to dismiss, consider[s] the allegations of the . . . complaint in the light most favorable to the [plaintiff]," that court has "eliminated any material issues of fact and its ruling turn[s] on a question of law." *Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1319 n.3 (11th Cir. 2014).

Issues about "which facts a party may, or may not, be able to prove at trial" are not legal issues that will support an interlocutory appeal. *Johnson v. Jones,* 515 U.S. 304, 313 (1995). Likewise, erroneous evidentiary rulings are among the types of orders we lack jurisdiction to review interlocutorily. *See Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 872 (1994) (discussing scope of the collateral order doctrine). Whether we have interlocutory appellate jurisdiction over any part of Swanger's and Brandt's appeal depends on whether their challenges to the denials of qualified immunity present any abstract legal issues, such as whether Jackson plausibly stated a violation of clearly established law. *See Iqbal,* 556 U.S. at 671–74.

### IV. Jurisdiction Over Swanger's Appeal

We begin with Swanger's appeal. He raises two types of issues to challenge the denial of qualified immunity on Jackson's unlawful seizure claim against him and Brandt. Swanger contends there was no clearly established law that the stop of the vehicle Jackson was riding in violated her constitutional rights. That's an abstract question of law subject to interlocutory appeal. He also contends that the district court should have considered certain video footage that he and Brandt hyperlinked to their motion to dismiss Jackson's amended complaint. That's an evidentiary ruling issue that is not interlocutorily appealable.

A. Jurisdiction Over Whether Swanger Violated Clearly Established Law When He Stopped the Vehicle

Swanger's appeal raises the issue of whether the law was clearly established that he lacked reasonable suspicion to stop the vehicle in which Jackson was riding. Pointing to factors including Jackson's own allegation that she moved a barricade as well as footage showing the vehicle's location after it was pulled over, Swanger contends that no clearly established law prohibited him from making the stop.

Jackson argues in her motion to dismiss this appeal for lack of jurisdiction that this part of Swanger's appeal presents "merely a fact issue in a legal issue's clothing." In her view, Swanger's appeal "is really just a list of alleged facts" presented to challenge "which facts the District Court did or did not consider." To the contrary, Swanger's argument that under the pleaded facts he did not violate clearly established law raises a "core qualified immunity issue[]." *Cottrell*, 85 F.3d at 1484 (quotation marks omitted). Under the collateral order doctrine we have interlocutory jurisdiction to review that qualified immunity issue. *See id.*; *Piazza*, 923 F.3d at 951 n.5; *Keating*, 598 F.3d at 760; *cf. Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (explaining in a summary judgment case that when both the evidentiary sufficiency and clearly established issues are raised on appeal, the appellate court may accept the district court's factual findings or conduct its own analysis of the facts in the light most favorable to the plaintiff).

B. Lack of Jurisdiction Over Whether District Court Abused Its Discretion in Ruling that It Would Not Consider Certain of the Video Footage

Swanger also contends that, in the course of deciding to deny him qualified immunity on Jackson's unlawful seizure claim, the district court erred in failing to consider the "undisputed or indisputable video evidence." He argues that the court failed to apply what he characterizes as the "rule" that "if there is clear video of the facts giving rise to the litigation, that video should provide the factual predicates for a court's determination of dispositive motions" — a rule that he says is "especially important when the issue is qualified immunity."

Swanger points first to the district court's refusal to consider the spliced video that was hyperlinked to the motion to dismiss. That video appears to combine footage of Jackson's arrest that was captured on a bystander's cell phone camera with footage from Swanger's body camera. Jackson asserts in her motion to dismiss this part of the appeal for lack of jurisdiction that the officers pulled that entire spliced video, consisting of those two parts, from an online news program. But there was no evidence of that presented to the district court, nor was there any evidence of who spliced that video or whether it was a complete recording of the events it purported to show.

In Swanger's view, the spliced video is "central" to Jackson's claims and, therefore, the district court must consider it at the motion to dismiss stage. He argues the district court was wrong to suggest such a video should have been "formally authenticated" when Jackson did not dispute its authenticity or contents, which she did not do. And he argues that the same video was

incorporated into Jackson's amended complaint. Swanger bases that argument on Jackson having attached as an exhibit to the amended complaint a pre-lawsuit notice to the City, which is required to assert claims against the City for money damages. Included in that attached exhibit were still photo images of the arrest that Swanger insists came from the spliced video. But the actual video was not in the exhibit attached to the amended complaint.

Turning to another video, Swanger also takes issue with the district court considering only some of his body camera footage — the part recording the seizure and its immediate aftermath — but not other parts of that video he believes are relevant to the reasonable suspicion analysis. He contends that it was improper for the court to refuse to consider parts of the video that showed the extent of civil unrest in the area (specifically the presence of the National Guard) and the officers' recorded post-arrest statements evidencing their perception of that unrest. Swanger contends that those parts of the video are essential to show the totality of the circumstances facing the officers at Lenox Square Mall, which gave them reasonable suspicion to stop the vehicle in which Jackson was a passenger.

Based in part on its review of Jackson's pleadings and Swanger's body camera footage, the district court ruled that Jackson had plausibly alleged that Swanger violated her clearly established right to be free from an unreasonable seizure. Swanger is asking us to hold that the district court abused its discretion in ruling that it would consider only part of his body camera video. The part the court did consider captured events before, during, and

immediately after the seizure.  But the court refused to consider the parts of the same video that captured events that occurred more than four minutes after the seizure.  It also refused to consider any footage from the spliced video, which the district court found had not been authenticated.

Swanger's challenge to the district court's rulings against considering some parts of the video footage is not an abstract legal issue.  Instead, it is the pleading stage equivalent of an appeal contending that the court made an erroneous evidentiary ruling, which is a type of appeal that we have no interlocutory jurisdiction to decide.  *See Digital*, 511 U.S. at 872.

Consider our decision in *English*, where we held that we had no interlocutory jurisdiction to second-guess how the district court treated video evidence when denying qualified immunity.  *See* 75 F.4th at 1156.  Because *English* was decided at the summary judgment stage, it posed the question of whether there was a genuine issue of material fact that the defendant officials had violated clearly established law.  *See id.* at 1155.  Although that is different from the question before us in this pleading-stage case, our analysis in *English* helps illuminate the limits of the collateral order doctrine.

The defendant officers in *English* were denied qualified immunity on a Fourth Amendment excessive force claim after they shot a man who was purportedly reaching for a gun.  *Id.* at 1154.  The officers insisted that their use of deadly force was objectively reasonable under the circumstances.  *Id.* at 1156.  The district court considered a video recording of the shooting that was submitted as

evidence and, based in part on that video, determined that there was a genuine issue of material fact preventing summary judgment. *Id.* at 1154.

In concluding that we lacked jurisdiction to interlocutorily review the denial of summary judgment in *English*, we pointed to the district court's finding that the video evidence left "up for interpretation" whether the man had moved his hand as if to reach for a gun. *Id.* at 1156 (quotation marks omitted). We concluded that "the dispute is about what the evidence could prove at trial; it is not a dispute about principles of law." *Id.*; *see also Smith v. Finkley*, 10 F.4th 725, 738–41 (7th Cir. 2021) (holding that there was no interlocutory jurisdiction to review a denial of qualified immunity where defendant officers "argue[d] that the district court erroneously disregarded undisputed facts and substituted its own interpretation of the body camera videos").

Swanger has not presented "a dispute about principles of law," either. *English*, 75 F.4th at 1156. He asks us to examine the video footage hyperlinked in his motion to dismiss and tell the district court which parts of the footage it must consider when reviewing Jackson's amended complaint. That kind of instruction about an evidentiary ruling — and a discretionary one at that — is outside the scope of the collateral order doctrine. *See Iqbal*, 556 U.S. at 674; *Coopers*, 437 U.S. at 469–477 (holding that a district court's "discretionary" determination that a suit may not proceed as a class action under Federal Rule of Civil Procedure 23 was not a "final decision" appealable under § 1291).

Swanger relies on decisions where we and other courts have on occasion exercised pendent appellate jurisdiction in qualified immunity appeals.[4] But the exercise of pendent appellate jurisdiction is discretionary, and we have not been shy about declining to indulge in it. *See Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908, 922 (11th Cir. 1995) ("Although we have discretion as an exercise of pendant appellate jurisdiction to review the issue, we decline to exercise that discretion here.") (internal citation omitted); *Crymes v. DeKalb Cnty.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (declining to exercise pendant appellate jurisdiction, which is "within this court's discretion"); *United States v. Masino*, 869 F.3d 1301, 1305 (11th Cir. 2017) ("[E]ven if we have [pendant appellate] jurisdiction . . . , we decline to exercise it."); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1366 (11th Cir. 2007) (expressing "considerable doubt" over whether this Court could exercise pendent jurisdiction over an issue and "exercis[ing] discretion" not to do so anyway); *Hartley v. Parnell*, 193 F.3d 1263,

---

[4] *See Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1297 (11th Cir. 2021) (concluding that this Court had "jurisdiction to review the denial of qualified immunity and state-law immunity" under the collateral order doctrine and asserting pendent appellate jurisdiction over additional issues); *Smith v. LePage*, 834 F.3d 1285, 1291–92 (11th Cir. 2016) (exercising pendent appellate jurisdiction over plaintiffs' claims on cross-appeal where it was "undisputed that this Court ha[d] jurisdiction over the officers' appeal from the denial of qualified and official immunity"); *Jewett v. Anders*, 521 F.3d 818, 822–25 & n.5 (7th Cir. 2008) (concluding that court had jurisdiction to review on summary judgment whether the undisputed facts showed a violation of clearly established law and exercising pendent appellate jurisdiction over an issue "intertwined with" the qualified immunity issue).

1272 (11th Cir. 1999) (declining to exercise "discretionary pendent appellate jurisdiction" to the extent that a basis for that jurisdiction was present).

As for the district court's decision not to consider the spliced video, we decline to exercise pendent appellate jurisdiction because the record is not clear whether that video is authentic, and the parties have not had an opportunity to participate in an evidentiary hearing on that question, if one is required. The issue of that video's authenticity is more properly addressed at the summary judgment stage or in another pretrial hearing or at trial, and if Swanger loses on it and is denied qualified immunity, he can appeal and include the authenticity issue in his appeal, assuming he has properly preserved it.[5] The same reasoning informs our decision

---

[5] Though "qualified immunity questions should be resolved at the earliest possible stage of a litigation," *Cottrell*, 85 F.3d at 1487 (quotation marks omitted), defendants may raise the defense "at any stage of the proceedings," *Johnson v. Fankell*, 520 U.S. 911, 915 (1997). Not only may Swanger and Brandt reassert qualified immunity on any motion for summary judgment. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). If need be, they may also assert the defense at trial, in which case the district court should "use special verdicts or written interrogatories to the jury to resolve disputed facts [relevant to . . .] the qualified-immunity question." *Cottrell*, 85 F.3d at 1487 (quotation marks omitted); *see also Butler v. Smith*, 85 F.4th 1102, 1118 n.6 (11th Cir. 2023) ("Of course, [the defendant officer] can raise qualified immunity at trial, urge the jury to view the record as she has framed it, seek special interrogatories to resolve the historical facts underlying her immunity argument, and then resubmit the issue to the district court for decision.").

not to exercise pendent appellate jurisdiction over any rulings involving Swanger's body camera footage either.

Swanger relies on *Scott v. Harris*, 550 U.S. 372 (2007), where the Supreme Court reviewed the denial of qualified immunity on summary judgment and rejected the district and appellate courts' reliance on a "version of events" that was "utterly discredited by the record," including video evidence. *Id.* at 380. The Supreme Court concluded that the courts "should have viewed the facts in the light depicted by [a] videotape" that "captur[ed] the events in question." *Id.* at 381, 378.

But *Scott* doesn't stand for the principle that an appellate court has interlocutory jurisdiction under 28 U.S.C. § 1291 to review a district court's discretionary decisions about incorporating video footage into the pleadings. *Scott* was decided on summary judgment, and there was no dispute that the video evidence was authentic, was admissible, and was admitted. *See* 550 U.S. at 378–79. Here we don't get that far along the procedural path. The collateral order doctrine does not give us jurisdiction at the motion to dismiss stage to review whether it was an abuse of discretion not to consider certain video footage.

We turn to the merits of the issue raised in Swanger's appeal over which we do have and exercise jurisdiction: whether his stop of Jackson and her fiancé's vehicle violated clearly established law.

### V. Whether it Was Clearly Established that Swanger Lacked Reasonable Suspicion to Stop the Vehicle

Swanger argues that his stop of the vehicle in which Jackson was riding did not violate her clearly established Fourth Amendment rights. The law is clearly established that an officer's "brief, investigatory stop" of a suspect does not violate the Fourth Amendment "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Jackson*, 206 F.3d at 1165 (quotation marks omitted). When assessing reasonable suspicion, we "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted). An officer exercising a discretionary function is entitled to qualified immunity on a claim that his investigatory stop violated the Fourth Amendment unless "he was violating clearly established law." *Jackson*, 206 F.3d at 1164–66. There is no dispute that in making an investigatory stop an officer is exercising a discretionary function. Whether a stop violated clearly established law given the circumstances is another question.

According to Jackson's amended complaint, she and her fiancé drove into the Lenox Square Mall area. When they attempted to leave the parking lot, they encountered a "barricade." No police officers were present to allow them to leave or to tell Jackson not to move the barricade, and there was no sign prohibiting her from moving the barricade. Jackson got out of the vehicle and moved the barricade a few feet so that she and her fiancé could leave the mall parking lot. Then she got back into the vehicle, and as it "was preparing to exit" the mall parking lot, Swanger and Brandt stopped the vehicle.

In addition to those allegations from the amended complaint, the district court also considered some of the footage from Swanger's body camera that was referred to, and incorporated by hyperlink into, the motion to dismiss. The court limited its consideration to video footage of events it deemed "central" to Jackson's claims. Those were, the court reasoned, the events that occurred immediately before, during, or immediately after the stop of the vehicle and the arrest. The court declined to consider video recordings of events occurring between about four and thirty-five minutes after Jackson had been put in the patrol car.

We will consider the same footage that the district court did. *See Baker*, 67 F.4th at 1277–78. Specifically, we will consider footage from the moment before Swanger and Brandt drove their car forward to pull over the vehicle in which Jackson was riding through the point at which the officers called an ambulance for Jackson about three minutes after the arrest. No party disputes the authenticity of that particular footage or its centrality to Jackson's claims in her amended complaint. *See Horsley,* 304 F.3d at 1134.[6] We will hereafter refer to that footage as "the considered video footage."

---

[6] Jackson argues that none of the footage from Swanger's body camera — including the part that the district court considered — is "properly in the appellate record." The basis for her argument is that the officers submitted it by hyperlink in violation of the district court's local rules. But Jackson did not make that argument before the district court, so we will not consider it. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and

22-12946                Opinion of the Court                25

The considered video footage shows that Swanger and Brandt's patrol car was not moving at first, but then Swanger turned the wheel and drove the car forward for about eleven seconds. He stopped the patrol car, apparently put it into park, and got out. That was when the considered video footage for the first time shows the vehicle that Jackson and her fiancé were in. Their vehicle was facing barricades that were lining a street perpendicular to the roadway in the parking lot on which the vehicle was stopped. The barricades consisted of sets of vertical metal bars that reached a height of about the bottom of a car window, and the length of each barricade was approximately a car's length or less. Jackson and her fiancé's vehicle was located at least a car's length away from those barricades. It was positioned mostly to the right of a solid white line on the pavement, but its left side partially crossed the line, leaving the vehicle straddling the line to some extent.

---

raised for the first time in an appeal will not be considered by this court.") (quotation marks omitted).

In any event, as Jackson acknowledges, the district court's decision not to exclude an exhibit based on the application of its local rules was discretionary. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009) ("We give great deference to a district court's interpretation of its local rules and review a district court's application of local rules for an abuse of discretion.") (quotation marks omitted). To the extent Jackson argues that the district court abused its discretion in considering footage that was submitted in violation of its local rules, she is challenging an evidentiary ruling over which we have no interlocutory jurisdiction, and if we have pendent appellate jurisdiction over that issue, we choose not to exercise it. *See* Part IV.B *supra*.

Taking the considered video footage into account, the district court found that there was no indication of criminal activity by Jackson or the driver that would have justified the stop. The court concluded that Jackson's allegations were sufficient to state a claim for unlawful seizure and to overcome Swanger's qualified immunity defense. Swanger argues the district court was wrong and asserts that the totality of circumstances alleged in the amended complaint and shown in parts of the video footage hyperlinked to his motion to dismiss support a reasonable suspicion of criminal activity, so that the circumstances of the stop did not violate clearly established law. He puts forward a number of factors or reasons that he says separately or in combination justified the stop of the vehicle.

### A. That the Officers Were Aware of the Presence of Looting, Protestors, and the National Guard in the Area

Swanger emphasizes footage from his body camera showing, in his view, that he and his partner "had been under siege and the targets of violent protests," that they were "aware there was widespread looting in the area around Lenox Mall," and that the National Guard was present in the area. But the portions of the body camera footage he cites captured events occurring more than four minutes *after* the stop and seizure. As Swanger acknowledges, that footage isn't part of the considered video footage. At this stage of the proceedings, we have no collateral order jurisdiction (and we assert no pendant appellate jurisdiction) to review whether the

district court's ruling excluding that particular footage from consideration was an abuse of discretion.  *See* Part IV.B *supra*.

### B.  That Jackson Moved the Barricade

Swanger contends that Jackson's own allegations in her amended complaint establish that she was interfering with a barricade by moving it.  But moving the barricade, as she did, is not criminal.  Swanger's counsel acknowledged at oral argument that no provision of the Georgia Code prohibits moving a barricade per se.  And it is no wonder why it doesn't.  Presumably barricades are used to stop people from getting *into* private or otherwise restricted locations.  Here, Jackson was moving the barricade so that she could get *out* of a private or otherwise restricted area.   There is no allegation or video evidence that she moved any barricade to get into the mall parking area.

Swanger cites two decisions in which courts concluded that crossing a barricade or refusing to move away from one involved criminal activity.  In *McCrosky v. State*, the Court of Appeals of Georgia affirmed a conviction for criminal trespass where the defendant crossed a barricade that had been set up in anticipation of protests, where the police had "announced over a megaphone that anyone crossing the barricade would be arrested," and where signs were visible stating "private drive" and "no trespassing." *See* 506 S.E.2d 400, 401–02 (Ga. Ct. App. 1998).  And in *Kass v. City of New York* the Second Circuit held that officers had probable cause to arrest the plaintiff for violating a state law prohibiting obstruction of the administration of governmental functions.  *See* 864 F.3d 200,

210 (2d Cir. 2017).  The plaintiff in *Kass* had "physically interfered with the officers' efforts to confine [a] protest to [a] park and keep the sidewalk clear for pedestrians" by pulling away from an officer who tried "to guide [the plaintiff] away from the barricades" that had been set up to separate protestors from pedestrians.  *Id.*

The *McCrosky* and *Kass* cases are readily distinguishable from this one.  There's no allegation in the amended complaint or indication in the body camera video that Jackson moved the barricade after a warning from an officer not to do so, or that she moved it in disregard of any sign warning she would be entering private property where no trespassing was allowed, or that she violated any law or police instructions to stay away from the barricade.  Instead, without any warning that she should not do so, Jackson moved the barricade so that she and her fiancé could leave the mall parking lot.

C.  That Jackson's Fiancé Drove in the Wrong Direction or on the Wrong Side of the Road.

Swanger argues that "the car in which Jackson was riding . . . attempted to exit in the wrong direction at the particular access point at which the driver chose to attempt to leave."  Swanger has not pointed to any of Georgia's Rules on the Road, or any other rule or statutory provision that makes it a crime to drive on the wrong side of a lane marked off in a private parking lot, as distinguished from a public road.  In any event, we need not decide if there is such a provision because the allegations of the amended complaint do not allege, and the considered video footage does not

show, that the vehicle was going the wrong way in the parking lot at or before the time it was stopped.

The considered video footage does show that the vehicle was stopped on a paved roadway that apparently had at least two lanes. And that the vehicle was facing an entrance or exit to a street. But there are no visible signs that indicate the car had been moving in the wrong direction. The stopped vehicle is straddling a white line, but Swanger has not argued that the vehicle was illegally changing lanes or not driving in one lane. Nor would the considered video footage clearly support such a position; just as plausibly, the vehicle was mid-turn when the police pulled it over, driving into the right-hand lane to reach the opening from which Jackson had moved the barricade.[7]

At the motion to dismiss stage, where video footage incorporated into the pleadings "is clear and obviously contradicts the plaintiff's alleged facts," we can disregard the operative complaint's contradictory allegations. *Baker*, 67 F.4th at 1277–78. But that is not the case here. The considered video footage does not affirmatively establish that Jackson's vehicle was traveling in the wrong direction or on the wrong side of the road when it was stopped.

---

[7] Swanger points to additional footage from his body worn camera that he contends shows that the vehicle was driving the wrong way or on the wrong side of the road. That footage captures events that occurred more than four minutes after Swanger and Brandt pulled over and seized Jackson and her fiancé. Because it is not part of the considered video footage, we will not take it into account at this stage.

Accepting the facts that the amended complaint alleges, and the absence of a fact that it does not allege, we conclude that Jackson's fiancé was not driving in the wrong direction or on the wrong side of the road.

### D. That Jackson's Fiancé's Driving Was "Peculiar."

Swanger argues that, even if Jackson and her fiancé were not breaking laws, the "peculiar" circumstances of their drive through the mall parking lot provided reasonable suspicion. He notes that they were present in the parking lot after midnight. And he points to *LeRoux v. State*, 684 S.E. 2d 424 (Ga. Ct. App. 2009), where the Court of Appeals of Georgia concluded that an officer had reasonable suspicion to stop a car that entered a university golf course at 2:30 a.m. where "numerous crimes had been committed . . . after hours." *Id.* at 426. In that case, the vehicle subject to the stop drove "past signs clearly indicating that the roadway was private property[,] . . . drove past many places where [the driver] could have turned around or stopped if he had taken a wrong turn or stopped if he needed to consult a map or make a telephone call[, ] . . . entered a parking lot and began circling, and . . . continued to circle rather than exit the parking lot when he returned to the entrance." *Id.*

Of course, we are not bound by decisions of any state court about whether a given set of facts amounts to reasonable suspicion for Fourth Amendment purposes. *See Deen v. Egleston*, 597 F.3d 1223, 1234 n.3 (11th Cir. 2010) ("[I]t goes without saying . . . that the opinions of state supreme courts do not bind us on questions

of federal constitutional law.").  And, even if we were bound by *LeRoux*, it is distinguishable.  There is nothing in the amended complaint or the considered video footage indicating that the vehicle that Jackson and her fiancé were in was circling continuously on private property that was known to be a hot spot for crime, all the while ignoring opportunities to exit and leave.  They were, instead, actively searching for a way to exit and leave the mall parking lot and get back onto the main road.  Otherwise, Jackson would have had no reason to move the barricade that was blocking them from leaving.

### E. Under the Totality of the Circumstances, It Was Clearly Established that Swanger Lacked Reasonable Suspicion to Stop the Vehicle.

Accepting Jackson's allegations as true and taking into account the considered video footage, we conclude that Jackson's fiancé was attempting to drive out of the mall parking lot.  The vehicle did not violate any applicable traffic rules.  She moved a barricade so that they could exit the mall area, which was not an illegal act given the circumstances.

It is clearly established that there was no reasonable suspicion to stop the vehicle on these facts.  *See Jackson*, 206 F.3d at 1161, 1166 (affirming the denial of qualified immunity where officers made an investigatory stop of the plaintiffs based on their allegedly suspicious behavior while driving where the evidence showed, among other things, that they had "obeyed all traffic laws" and "acted normally").  Development of the factual record may bring

to light additional factors showing that it was not a violation of clearly established law for Swanger to stop the vehicle. But at this stage, we accept the allegations in the pleadings and the considered video footage. We affirm the district court's denial of Swanger's motion to dismiss on Jackson's unlawful seizure claim.[8]

## VI. Jurisdiction Over Brandt's Appeal

We turn next to Brandt's appeal of the district court's denial of qualified immunity for Jackson's two 42 U.S.C. § 1983 claims against him: that Brandt unlawfully seized her, and that he failed to intervene in Swanger's use of excessive force against her. We begin with a discussion of our jurisdiction to review the denial of those two claims.

A. Jurisdiction over and Resolution of the Unlawful Seizure Claim

Brandt's position on the district court's denial of his motion to dismiss the unlawful seizure claim is identical to Swanger's position on that issue.[9] Like Swanger, Brandt challenges both (1) the

---

[8] Swanger also presents a one-sentence argument that he had probable cause to arrest Jackson because she "obstructed Officer Swanger's efforts [to detain her] and attempted to flee." The district court, having denied the motion to dismiss the unlawful seizure claim on the ground that the officers lacked reasonable suspicion based on clearly established law, did not reach the probable cause issue. Because we affirm the district court's denial of the motion to dismiss the unlawful seizure claim based on the absence of reasonable suspicion under clearly established law, we also do not reach probable cause.

[9] Brandt and Swanger jointly filed both their motion to dismiss before the district court and all of their briefs to this Court. They were also represented by

district court's finding that he violated clearly established law when the two of them stopped Jackson and her fiancé's vehicle without reasonable suspicion, and (2) the district court's decision not to incorporate some of Swanger's body camera footage or any of the spliced video into the pleadings.

Brandt's assertion that he did not violate clearly established law when he stopped the vehicle is a "core qualified immunity issue[]." *Cottrell*, 85 F.3d at 1484 (quotation marks omitted). We have jurisdiction to review that issue for the reasons discussed in Part IV.A concerning our jurisdiction over the denial of qualified immunity to Swanger on the unlawful seizure claim. And we affirm the district court's denial of Brandt's motion to dismiss the unlawful seizure claim for the reasons explained in Part V concerning the merits of Swanger's qualified immunity defense to the unlawful seizure claim.

Brandt's challenge to the district court's discretionary decision not to incorporate certain extrinsic material into the pleadings does not raise an abstract issue of law. *See Iqbal*, 556 U.S. at 671–74; *Digital*, 511 U.S. at 872. We lack jurisdiction under the collateral order doctrine to reach that part of Brandt's appeal, and we decline to assert pendant appellate jurisdiction, for the reasons explained in Part IV.B concerning our lack of jurisdiction to address the same issue raised by Swanger.

---

the same counsel during oral argument. Brandt hasn't argued that his qualified immunity defense to the unlawful seizure claim differs from Swanger's.

B. Jurisdiction over the Failure to Intervene Claim

Brandt argues in part that he is entitled to qualified immunity on Jackson's failure to intervene claim because Jackson's amended complaint fails to adequately allege that he violated clearly established law when he failed to intervene in Swanger's alleged use of excessive force.  That is an abstract legal issue which we have jurisdiction to review under 28 U.S.C. § 1291.  *See Piazza*, 923 F.3d at 951 n.5; *Morris*, 748 F.3d at 1319 n.3; *Keating*, 598 F.3d at 760.

Jackson argues that we lack jurisdiction to reach the district court's dismissal of Brandt's failure to intervene claim for two reasons.  First, she mistakenly contends that Brandt failed to make that argument before the district court.  Brandt's motion to dismiss before the district court explicitly challenged the sufficiency of Jackson's allegations about that claim, and the district court ruled that Jackson's amended complaint did state a violation of clearly established law regarding Brandt's failure to intervene.

Second, Jackson contends that Brandt's argument is "baseless."  But that is an argument about the merits, not an argument about our jurisdiction.  We do have interlocutory jurisdiction to determine whether Jackson's failure to intervene claim "sufficiently alleged the violation of a clearly established right." *Keating*,

598 F.3d at 760 (quotation marks omitted).  We proceed to address the merits of that claim.[10]

## VII. Whether Brandt Violated Clearly Established Law When He Did Not Intervene to Stop Swanger's Alleged Use of Excessive Force

Jackson claims that Brandt violated the Fourth Amendment by failing to intervene in Swanger's use of excessive force.  "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force[] can be held liable for his nonfeasance" if that officer "was in a position to intervene yet failed to do so." *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009) (citation omitted).  Jackson alleges that Brandt "was in a position to intervene" physically and verbally but "made no effort" to do so when Swanger (1) pursued the vehicle without reasonable suspicion or probable cause, (2) unholstered his firearm, (3) pointed it at Jackson, (4) "physically assault[ed]" her, and (5) threw her to the ground.  According to Jackson's amended complaint, Brandt "had the opportunity" to instruct

---

[10] Brandt also asserts that the district court "erred by failing to consider" the spliced video when it denied qualified immunity on the failure to intervene claim against him.  That is another way of arguing that the district court abused its discretion by not considering certain video footage when it assessed the sufficiency of Jackson's pleadings.  For the reasons discussed in connection to Swanger's challenge to the denial of qualified immunity on Jackson's unlawful seizure claim against him, *see* Part IV.B *infra*, we lack interlocutory jurisdiction to consider this video footage issue.  And to the extent that we have pendent appellant jurisdiction over it, we decline to exercise it. *See id.*

Swanger not to take these actions, but Brandt "never told" Swanger not to do so.

Brandt argues that Jackson's pleadings, along with the video evidence, fail to state that he was in a position to intervene because Brandt was "dealing with" another suspect at the time of the alleged excessive force: Jackson's fiancé, the driver of the car. Brandt relies on two sources to support that position. First, he cites the following paragraph in Jackson's amended complaint:

> One officer, now known to be Defendant Brandt, got out of the patrol car and *went toward the driver's side of the vehicle* they had stopped, while a second officer, now known to be Defendant Swanger, ran around to Ms. Jackson's passenger side of the vehicle.

In Brandt's view, Jackson's allegation that he approached her fiancé on the other side of the car is inconsistent with her claim that he was in a position to intervene.

Second, Brandt points to the portion of Swanger's body camera footage hyperlinked in his motion to dismiss that captures the alleged use of excessive force. That footage falls within the considered video footage that the district court incorporated into the pleadings, so we will also consider it. *See* Part V *infra*.

Based on the considered video footage, Brandt argues that "only 14 seconds" passed between the time Jackson was "out of the car" and the time she was "on the ground." Brandt asserts that he could not have intervened in this time "[g]iven that [he] was dealing with the driver on the other side of the car."

An officer is obligated to take reasonable steps to intervene in another officer's use of excessive force, but only if he is in a position where he can reasonably do so. *See Crenshaw*, 556 F.3d at 1293–94. One method of intervention is by verbally commanding or directing the other officer to stop using the force that is excessive. *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 923–28 (11th Cir. 2000) (reversing the grant of qualified immunity to a sergeant who failed to intervene and tell an officer to restrain his dog who attacked the plaintiff for up to two minutes).

In many situations, an officer will not be in a position to intervene in the use of force against one suspect if his attention is focused on another suspect. *See Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir. 2020) (affirming grant of summary judgment to defendant officer on failure to intervene claim where he "helped . . . restrain" another suspect "while" another officer allegedly used excessive force against the plaintiff); *Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998) (reversing denial of qualified immunity to defendant officer on summary judgment where the alleged excessive force "occurred while [the defendant officer] was attempting to restrain and arrest" another suspect).

The *Alston* and *Ensley* rule makes sense. Officers, like other mortals, cannot do two things in two different locations at once. And they cannot be expected to leave a potentially dangerous suspect unattended to intervene between an officer and another suspect. The facts of this case (the allegations in the pleadings along with the considered video footage) illustrate why. According to

Jackson's amended complaint, Swanger approached Jackson on the passenger's side of the vehicle, while Brandt approached Jackson's fiancé on the driver's side of the vehicle. Brandt did not know the identity of the driver. He had no way of knowing if the driver was armed. For all he knew the stranger who had been driving in a parking lot of a mall at about 1:00 a.m. was dangerous. A reasonable officer in this situation would keep his eyes and attention on the suspect for whom he was responsible, with the expectation that his fellow officer was properly managing the other suspect on the other side of the car. He would not focus his attention on monitoring the other officer's behavior, or at least not every reasonable officer would have done so.

There are situations where a reasonable officer should divert his attention from one suspect to intervene in another officer's use of excessive force. But here, any use of excessive force happened quickly and was over quickly. Swanger's body camera footage demonstrates how quickly. It shows that Swanger took about three seconds to open his own car door and run to the passenger's side of the other vehicle where Jackson was seated.[11] Swanger repeatedly shouted at Jackson to "[g]et out of the car" and screamed "shut the fuck up." About two seconds later, the passenger-side door opened. Jackson stepped out of the vehicle after about three seconds, and then she began moving away from Swanger after

---

[11] The amended complaint alleges that when he reached the other vehicle, Swanger's firearm was drawn. Because this fact was not clearly contradicted by the footage, we accept it as true, but it does not change our conclusion.

another four seconds. Swanger made physical contact with Jackson, and Jackson's body blocked most of the camera's view for about seven seconds. Jackson was then seen on the ground, and two seconds later, Swanger began putting Jackson in handcuffs. It was done and over that quickly.

Swanger's body camera footage establishes that approximately nine seconds passed between the moment when Swanger first made physical contact with Jackson and the time when Swanger had Jackson on the ground and began handcuffing her. Jackson's position is that the law was clearly established that in those nine or so seconds, the Fourth Amendment required Brandt to stop dealing with the driver and focus on what was happening between Swanger and Jackson; and determine if she was resisting or attempting to flee; and assess the amount of force Swanger was using on Jackson; and make a determination on whether it was too much force in view of all the circumstances; and, if he decided it was excessive, decide how he should intervene; and then intervene in an appropriate and reasonable manner. All in the course of nine seconds or so.

It would not be reasonable to require anyone to think and move that quickly in a difficult and fast-evolving situation that is fraught with uncertainty and peril. As we have emphasized before in reversing the denial of qualified immunity in an excessive force case, officers have to make rushed judgments "in circumstances that are tense, uncertain, and rapidly evolving." *Corbitt v. Vickers*, 929 F.3d 1304, 1321 (11th Cir. 2019) (quotation marks omitted).

The law does not require perfection, much less the super-human perfection and speed that Jackson would have us demand of Brandt. Instead, as we explained in *Corbitt*, Fourth Amendment excessive force claims are "evaluated pursuant to a calculus that must embody allowance for the fact that police officers" are often forced to make quick decisions in difficult circumstances. *Id.* (alterations adopted) (quotation marks omitted). No binding authority requires officers to engage in extraordinary feats of action, reaction, speed, and movement. Clearly established law does not place that burden on Brandt. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (reversing denial of qualified immunity on failure to intervene claim against defendant officer who was in no position to "anticipate[] and then stop[]" his fellow officer's use of force). "[O]n-the-scene officers are often hampered by incomplete information and forced to make a split-second decision between action and inaction." *Davis v. City of Apopka*, 78 F.4th 1326, 1335 (11th Cir. 2023) (quotation marks omitted) (affirming dismissal of Fourth Amendment arrest claims). Reasonableness is required, and reasonableness is not perfection.

There is no decision of this Court or the Supreme Court establishing that, in the circumstances of this case, Brandt violated Jackson's clearly established rights by not intervening. The district court based its contrary decision on four published opinions, but two of them actually held that the defendant officers were entitled to qualified immunity on the plaintiffs' failure to intervene claims. *See Crenshaw*, 556 F.3d at 1294; *Ensley*, 142 F.3d at 1407–08. A decision holding that an officer did not violate the Fourth Amendment

by failing to intervene in that case cannot possibly establish — much less clearly establish — that an officer did violate the Fourth Amendment in another case by failing to intervene.

In the other two decisions the district court relied on, there were denials of summary judgment to the defendant officers, but in circumstances different from the ones in this case. The officers in those cases were not involved with rapidly evolving situations in which they had to make nearly instantaneous decisions. *See Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (reversing grant of summary judgment to officers who allegedly used excessive force or failed to intervene where plaintiff "alleged that two officers were present when he was subjected to a beating while handcuffed" and both officers "admitted being present"); *Skrtich v. Thornton*, 280 F.3d 1295, 1300, 1305 (11th Cir. 2002) (affirming denial of qualified immunity to prison officials who allegedly either "administered a severe beating with no other purpose than the infliction of pain," resulting in the prisoner being airlifted to a hospital, or stood by and watched the assault take place). Neither of those two sets of facts resemble what happened here.

We follow *Baker*'s holding that "where a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account." 67 F.4th at 1277–78. Doing so leads to the conclusion that Brandt did not have a reasonable opportunity to intervene physically or verbally and stop Swanger's use of alleged excessive force against Jackson. As a result, Brandt did not violate Jackson's Fourth Amendment rights,

much less her clearly established Fourth Amendment rights.  The district court should have granted his motion to dismiss the claim on qualified immunity grounds.

## VIII. Conclusion

We lack jurisdiction under 28 U.S.C. § 1291 to consider Swanger and Brandt's appeal of the district court's decision not to incorporate certain video footage into the pleadings.  And we decline to assert pendant appellate jurisdiction over that issue.  As a result, we grant Jackson's motion to dismiss for lack of jurisdiction the part of the appeal challenging the district court's decision not to incorporate into the amended complaint certain video footage, and we dismiss that part of the appeal.  If either party properly raises them, the district court can and should reconsider for summary judgment and trial purposes any authentication and other issues involving any part of the video footage.

Because we do have interlocutory jurisdiction to review the district court's denial of Swanger and Brandt's motion to dismiss Jackson's unlawful seizure claim, we deny Jackson's motion to dismiss that part of this appeal.  We affirm the district court's denial of the officers' motion to dismiss that claim.

We also have interlocutory jurisdiction to review the district court's denial of Brandt's motion to dismiss Jackson's failure to intervene claim, and we vacate and remand with instructions for the court to dismiss that claim.

**DISMISSED IN PART, AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.**