[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10927

_____

JOSHUA PAUL ENGLISH,
as Surviving Parent of Adam Paul English, Deceased,
LAURA LEAH KING,
as Surviving Parent of Adam Paul English, Deceased,
MIKE HINTON,
Administrator of the Estate of Adam Paul English,

                                        Plaintiffs-Appellees,

*versus*

THE CITY OF GAINESVILLE,

                                        Defendant,

2                    Opinion of the Court                    22-10927

OFFICER JONATHAN FOWLER,
OFFICER JOSE HERNANDEZ,

                                                Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:20-cv-00147-RWS

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, Circuit Judge, and COOGLER,[*] Chief District Judge.

WILLIAM PRYOR, Chief Judge:

This appeal invites us to decide whether two police officers who fatally shot a suspect are entitled to summary judgment based on qualified and official immunity. The district court denied summary judgment because it determined that the record raised a genuine issue of material fact. Because we lack appellate jurisdiction over a denial of qualified or official immunity that turns on issues of evidentiary sufficiency, we dismiss this appeal for lack of jurisdiction.

---

[*] Honorable L. Scott Coogler, Chief United States District Judge for the Northern District of Alabama, sitting by designation.

## I. BACKGROUND

On September 20, 2019, a medical assistant in Gainesville, Georgia, was sitting at her desk when she heard a gunshot. She looked out her window and saw a man pointing a gun at himself and at cars passing by on Jesse Jewell Parkway. Someone in the office called 911.

Several police officers from the Gainesville Police Department, including Jonathan Fowler and Jose Hernandez, responded to the call around 4:30 p.m. While en route to the scene, both officers heard the dispatcher say that hospital security guards had the suspect held at gunpoint. Fowler also heard that the suspect had discharged a round from his firearm.

The officers found the suspect, Adam Paul English, standing in a median outside a doctor's office. The median was in a high-traffic area—in front of a parking deck, across the street from a hospital, and adjacent to Jesse Jewell Parkway, which was busy with rush-hour traffic. Fowler first saw English bent over at the waist with his right hand in a bag on the ground. Hernandez saw English holding a bag. Neither officer saw English holding a gun or otherwise saw a gun on his person.

A group of officers, including Fowler and Hernandez, exited their vehicles and drew their guns. Hernandez approached with a handgun. Fowler joined with a shotgun. Fowler activated his body camera, as did another officer. Hernandez's dash camera also recorded the encounter.

The officers approached while shouting commands that English show and raise his hands. English's right hand was not visible to the officers. And English failed to comply with the officers' orders. Hernandez warned English that he might be shot if he did not comply. At some point during the approach, the dispatcher communicated that English put the gun into a bag. Fowler testified that he did not hear this communication because he was simultaneously shouting commands at English. The bag was on the ground at English's feet as the officers approached.

Fowler and Hernandez testified that shortly after initiating their approach, they saw English make a sudden movement. Fowler testified that he saw English make "a hurried movement towards us moving his hand and his right shoulder towards us." Fowler believed that English had a firearm in his hand or waistband and that "when he made that movement, he was drawing it out to fire it." Hernandez testified that he saw English make "a direct steady movement with his right hand towards the right side of his hip."

Both officers fired shots. Fowler fired once and Hernandez fired eight times. English died from his wounds. Officers later recovered a gun from inside the bag.

English's survivors and the administrator of his estate sued Fowler and Hernandez. Their complaint alleged claims of excessive force under the Fourth Amendment, *see* 42 U.S.C. § 1983, and battery and negligence under Georgia law. And it demanded money damages.

22-10927                Opinion of the Court                5

Both officers moved for summary judgment. They argued that they are entitled to qualified immunity from the claim of excessive force. They also argued that they are entitled to official immunity under Georgia law from the claims of battery and negligence.

The district court denied the officers' motions. It concluded that the officers were not entitled to qualified immunity against the claim of excessive force because a reasonable jury could find that the officers violated a clearly established constitutional right. The district court also determined that the officers were not entitled to official immunity because a reasonable jury could find that the officers lacked any justification to fire their guns at English.

Video footage from the encounter is unclear as to the existence or extent of English's movement. The officers testified that they saw English make a quick movement as if to reach for a gun, but the district court found that "the videos leave that conclusion up for interpretation." Officer Fowler also acknowledged that "[t]he poor video quality does not show the suspect's movement clearly."

## II. STANDARDS OF REVIEW

We review *de novo* whether the officers are entitled to summary judgment based on immunity. *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (qualified immunity); *Hoyt v. Cooks*, 672 F.3d 972, 981 (11th Cir. 2012) (official immunity). We review jurisdictional issues *de novo*. *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 848 (11th Cir. 2022)

### III. DISCUSSION

We divide our discussion into two parts. First, we explain that we lack jurisdiction to review the denial of summary judgment based on qualified immunity. Second, we explain that we lack jurisdiction to review the denial of summary judgment based on state-law official immunity.

*A. We Lack Jurisdiction to Review the Denial of Summary Judgment Based on Qualified Immunity.*

"We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for 'without jurisdiction we cannot proceed at all in any cause.'" *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (alterations adopted) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)). "[A]djudicating an appeal without jurisdiction would 'offend fundamental principles of separation of powers.'" *Id.* (alteration adopted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

"Whether we have interlocutory jurisdiction to review the denial of summary judgment on qualified immunity grounds depends on the type of issues involved in the appeal." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996) (emphasis omitted). An appeal may raise "legal issues," such as "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Id.* (citation omitted). "[W]e have interlocutory jurisdiction over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds." *Id.*; *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). But an appeal may also raise issues of "evidentiary sufficiency." *Cottrell*, 85 F.3d at 1484.

Such issues arise when we are asked to determine "whether the district court erred in determining that there was an issue of fact for trial about the defendant's actions or inactions which, if they occurred, would violate clearly established law." *Id.* We lack interlocutory jurisdiction "where the only issues appealed are evidentiary sufficiency issues." *Id.*; *see Johnson v. Jones*, 515 U.S. 304, 313 (1995) (explaining that a district court's determination that the summary judgment record raised a genuine issue of fact concerning defendants' actions is not an appealable decision).

Some appeals raise questions of both law and fact. When an official "moves for summary judgment based on qualified immunity, a district judge must determine whether there is a genuine issue of material fact as to whether the [official] committed conduct that violated clearly established law." *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000) (citation and internal quotation marks omitted). "This decision involves a two-part analysis: (1) defining the official's conduct, based on the record and viewed most favorably to the non-moving party, and (2) determining whether a reasonable public official could have believed that the questioned conduct was lawful under clearly established law." *Id.* (footnote omitted). Our precedents "establish[] only that a plaintiff may not base an interlocutory appeal on the district court's first determination *by itself.*" *Id.* at 1296 (quoting *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998)). "When *both* core qualified immunity issues are involved, we have jurisdiction for *de novo* review . . . ." *Id.*; *see also Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (explaining that an appeal is precluded only "if what is at issue in the sufficiency determination is nothing

more than whether the evidence could support a finding that particular conduct occurred").

The only issues in this appeal are issues of evidentiary sufficiency. In their motions for summary judgment, the officers argued that their use of force was reasonable under the circumstances because they encountered a suspect who had brandished a gun, discharged it at least once, and ignored their commands to show his hands. The officers argued that in the light of these facts, when they saw English move, they had actual and probable cause to use deadly force on him. But the district court determined that "viewing the evidence and the videos in the light most favorable to Plaintiffs," a reasonable jury could find that the officers' use of force was unreasonable. It reasoned that "though the officers say that they saw [English] make a quick motion as if to reach for a gun . . . the videos leave that conclusion up for interpretation." In other words, the district court ruled against the officers because of a genuine dispute of material fact. This is the type of ruling that we lack jurisdiction to review. *See Johnson*, 515 U.S. at 313.

The district court also considered the officers' argument that English's constitutional right to be free from excessive force in these circumstances was not clearly established. The district court explained that deadly force is justified only where a reasonable officer would believe that the suspect "posed an *immediate* threat of serious physical harm." The officers argued, as they do here, that English in fact posed an immediate threat.

Again, the district court ruled against the officers because of a genuine dispute of material fact. It determined that "[u]nder Plaintiffs' version of the facts, these circumstances did not exist: the video evidence showed that Mr. English was not fleeing . . . or resisting . . . [or] threatening the officers, himself, or anyone else." In other words, upon reviewing the evidence, "a reasonable jury could view the sequence of events differently than [the officers] said they did." The district court acknowledged that the officers "contest several of these points" and contend "that they do not accurately depict the scene as they encountered it." But the dispute is about what the evidence could prove at trial; it is not a dispute about principles of law.

To be sure, the officers try to cast their arguments as legal disputes. But this appeal does not raise questions about whether certain undisputed conduct violated the Fourth Amendment or whether the law was clearly established. The parties agree that the use of deadly force against a non-resisting suspect who *poses no danger* violates a suspect's Fourth Amendment right to be free from excessive force. The dispute is whether English—in fact—posed a danger when the shooting occurred. In other words, the only issues in this appeal concern what happened at the scene. Those are questions of fact, not law.

### B. *We Lack Jurisdiction to Review the Denial of Summary Judgment Based on Official Immunity.*

Officials "may immediately appeal an order denying state official . . . immunity, provided that the applicable state law defines

the immunity at issue as one from suit instead of from just liability." *Jones v. Fransen*, 857 F.3d 843, 849 (11th Cir. 2017). Georgia law defines its official immunity as immunity from suit. *Id.*; GA. CONST. art. I, § II, ¶ IX(d). Thus, we ordinarily have jurisdiction to review the denial of state-law official immunity. *See Jones*, 857 F.3d at 850. But as in the qualified immunity context, we lack interlocutory appellate jurisdiction over the denial of summary judgment based on state-law immunity where the appeal turns on issues of evidentiary sufficiency. *See Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) (explaining that "instant appeal is not available . . . when the district court determines that factual issues genuinely in dispute preclude summary adjudication").

We lack jurisdiction over this denial of official immunity. The district court denied summary judgment based on official immunity because the evidence "raises a factual question regarding whether Mr. English posed an imminent threat to the officers and . . . whether the officers acted with justification." The district court explained that "[t]he evidence could lead a reasonable jury to conclude that [the officers] lacked any justification to fire their guns." In other words, the district court denied summary judgment because of a genuine dispute of material fact.

## IV. CONCLUSION

We **DISMISS** the appeal for lack of jurisdiction.