[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13616

_____

CARL M. MURDOCK, JR.,

Plaintiff-Appellee,

*versus*

MONTGOMERY COUNTY ALABAMA, et al.,

Defendants,

WANDA ROBINSON,
individually and in her capacity as
Director of Montgomery County Detention Center,
BARBARA PALMER,
individually and in her capacity as
Assistant Director of Montgomery County Detention Center,

Defendants-Appellants.

———————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:16-cv-00444-RAH-SMD

———————————

Before JORDAN, LAGOA, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Carl Murdock, Jr. was held in pretrial detention for forty-eight days before he received his initial appearance hearing. Murdock sued Wanda Robinson and Barbara Palmer (the director and then-assistant director of the detention facility) under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his constitutional rights because they did not inform the court as soon as they allegedly learned that he was past due for his hearing. Robinson and Palmer appeal the district court's denial of their motion for summary judgment based on qualified immunity.

## I. Background

In 2010 the Montgomery County Circuit Court Clerk's Office issued a warrant for Murdock's arrest, apparently for his failure to appear for a probation "review." (At the time, Murdock was on probation after being convicted of second-degree theft of property.) When Murdock learned about the warrant he met with his

probation officer, who assured him that "everything was squared away" and that he was "free to go." He went about his life. But more than four years later, on June 19, 2014, officers served Murdock with the arrest warrant. They took him to the Montgomery County Detention Facility where he was booked, fingerprinted, and held without bond.

According to the Alabama Rules of Criminal Procedure and Montgomery County Detention Facility practice, which are consistent with federal due process requirements, a few things are supposed to happen when someone is processed into the detention facility. First, the detention facility clerk receives and timestamps the detainee's booking paperwork (the arrest warrant, final disposition sheet, and commitment form). On the morning of the next business day, someone from the detention facility clerk's office walks those documents over to the circuit court clerk's office. Upon receiving the booking paperwork, the circuit court clerk generates a "booking" list (or "first call" list), which is a list of the detainees that the clerk's office wants brought over to court for their initial appearances. Once that list is prepared, a court security officer walks it back over to the detention facility, where facility staff then prepare the named detainees for transport. A pretrial detainee arrested pursuant to a warrant is supposed to appear before a judge "without undue delay" and "in no event later than seventy-two (72) hours after arrest." Ala. R. Crim P. 4.3(b)(2).

In this case, facility staff delivered Murdock's booking paperwork to the circuit court clerk on June 20, 2014, the day after his

arrest. But for some reason, Murdock was not taken before a judge within seventy-two hours of his arrest. In fact, he wouldn't be taken before a judge for another forty-seven days.

During intake Murdock had received a copy of the detention facility's inmate handbook. The handbook explains that inmates can make miscellaneous requests by filling out "inmate request forms" and placing them in their cellblock mailbox. It also advises inmates that they can "voice any grievance to the Jail Administration" by putting their grievances "in writing on the Inmate Grievance Form" and placing them in the mailbox. According to the handbook, the "Administration will give prompt and fair consideration to any grievance and will take appropriate action when warranted."

Colonel Wanda Robinson, director of the detention facility, testified that after being submitted inmate request forms are collected from cellblock mailboxes and sent to the detention facility's booking area where a clerical officer, sergeant, or lieutenant will address them. According to Robinson, if a detainee uses an inmate request form to ask when his court date is, the "norm" is that "somebody will call over" to the court to find out the date and will then write it on the request form and return a copy to the inmate with the original being put into the inmate's "file folder." As for grievance forms, the jail has a grievance clerk who is responsible for collecting, sorting, investigating, and either responding to the forms or distributing them to the appropriate officials for response. For example, grievance forms complaining about food are

delivered to those responsible for food service, who then provide a written response. Detention facility policy directs the grievance clerk to promptly forward any grievance "requiring expedited consideration" to an "official at a level capable of immediately correcting the situation."

Sometimes inmates are able to pass their requests and grievances directly to jail administration. Robinson testified that part of her job as director is to "walk the jail," "talk to the inmates," and "deal with grievances." She explained that sometimes she "get[s] inmate request forms requesting information from [her]" when she walks the jail. Major Barbara Palmer, then the assistant director of the facility, likewise testified that she would walk the floor of the jail "at least three times a week," carrying a pencil and paper with her so that she could jot down and address any issues brought to her attention by the inmates.

Toward the end of June 2014, when Murdock had been detained for more than a week and realized that he was not being scheduled for a court appearance, he filled out an inmate request form. During his deposition, he testified that in the form he "stated what — what [his] situation was" and asked "to talk to somebody." His testimony makes clear that his "situation" was not having received an initial appearance hearing. He addressed the form to Robinson and put it in the cellblock mailbox, but he never received any response.

In early July Murdock began asking corrections officers for grievance forms. According to him, the officers usually ignored his

6                    Opinion of the Court                    21-13616

requests or told him that they didn't have the forms. That changed in mid-July, when an unidentified officer brought Murdock a grievance form and another officer that Murdock knew from junior college brought him a blank document titled "Motion to the Court." On July 14, 2014, Murdock filled out the grievance form. The grievance form is not in the record, but Murdock testified that he addressed it to no one in particular and wrote "something" about "Gestapo tactics to pick [him] up off the street and hold [him]." That particular form does not play a critical role in this matter.

But another form does. The form that plays a critical role is the "Motion to the Court" requesting an attorney, a bond hearing, and a preliminary hearing. Murdock testified he filled out the motion the same day, July 14, as the grievance form. And he placed both in the cellblock mailbox that same day. Murdock also testified that he "watched" both documents sit in the mailbox for three days before they were collected, although a file stamp on the motion to the court indicates that it was filed with the circuit court on July 16, which was two days after he filled it out.

On July 18, 2014, the circuit court granted Murdock's motion and set a "sentencing" hearing for August 6.[1] At that hearing the circuit judge issued an order for Murdock's immediate release. She also gave Murdock a letter addressed to his employer

---

[1] The circuit court judge who presided over Murdock's case was on vacation for the month of July.

explaining that he was arrested "due to a clerical error" and that the arrest warrant "should never have been issued."

Murdock never received a response to his grievance form. Robinson and Palmer assert that they have no record of Murdock's inmate request form, describing his lack of a hearing, or his grievance form, and they deny receiving either.[2] Murdock never spoke directly to Robinson or Palmer about his situation; he admitted that he "never talked to" them at all.

During his forty-eight-day detention, Murdock missed four paychecks, his car was repossessed, he defaulted on a loan, and his roommate sold some of his personal belongings to pay rent.

Murdock sued Robinson and Palmer under 42 U.S.C. § 1983 for alleged violations of his Fourteenth Amendment due process rights.[3] Specifically, Murdock alleged that Robinson's and Palmer's

---

[2] Robinson testified that if the inmate request form or grievance form had been put in the cellblock mailbox, the original form or a copy of it would have been put in Murdock's inmate file. Detention facility policy requires the grievance clerk to send a detainee a written receipt "indicating the time and date the Grievance Clerk received the complaint." But the jail does not have any record of either form being filed, and Murdock does not have a copy of either form.

[3] Murdock initially alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights. He later conceded that the Fifth Amendment does not apply to his claims. The district court concluded that Murdock's claims are properly analyzed under the Fourteenth rather than the Fourth Amendment because he challenges the sufficiency of the process he received during his detention. *See West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007); *Cannon v. Macon County*, 1 F.3d 1558, 1562–63 (11th Cir. 1993); *cf. Case v. Eslinger*, 555

actions and inactions constituted deliberate indifference to his constitutional rights, and he alleged that they are liable in their supervisory capacity based on their adoption of "careless and reckless polices, customs, and practices" that led to the constitutional violations.[4] He also brought a false imprisonment claim against Robinson and Palmer under Alabama law.

Robinson and Palmer moved for summary judgment, contending that they are entitled to qualified immunity on Murdock's constitutional claims and state law immunity under Alabama Code § 14-6-1, which extends certain immunities to jailers, on his false imprisonment claim. At a hearing on the motion for summary judgment, the district court tried to drill down on whether Robinson or Palmer had actual knowledge of Murdock's prolonged detention. The court asked counsel for both defendants the following question about Murdock's inmate request and grievance forms:

---

F.3d 1317, 1330 (11th Cir. 2009). The parties do not dispute that determination; their arguments focus on whether Murdock has shown a Fourteenth Amendment violation. Any arguments related to Fourth Amendment violations have been forfeited. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

[4] Robinson and Palmer argue that they were sued based on only "their responsibility for the conduct of the employees at the jail, and their final policymaking at the jail," and not based on their personal involvement in the underlying constitutional violation. We disagree. In addition to his supervisory liability claim, Murdock proceeded on the theory that Robinson and Palmer directly caused, through their own "actions and inactions," his prolonged detention despite his repeated request for a hearing, which "represents a deliberate indifference to [his] rights."

"Let's assume [Murdock] had filled out one of these forms.  To whose attention are those typically brought? . . . Would that get on the radar screen of any of the defendants who have been named in this case?"  Defense counsel responded:

> No.  It depends on what the form says.  For instance, if the form had said, ["]I'm not getting medical attention,["] it would have gone to our medical people. Just depends on what the form said.  In this case, if he had said in the form, ["]I'm not getting my 72-hour hearing,["] *I'm certain that would have gone to the attention of the director or at least the assistant director.*

Doc. 86 at 36 (emphasis added).  Counsel did not attempt to retract or explain away that answer in the district court, not even after the district court relied on it to deny her clients summary judgment. Counsel's first attempt to refute that statement came in the defendants' initial brief on appeal.

As mentioned, the district court denied Robinson and Palmer qualified immunity on Murdock's deliberate indifference claim and his claim alleging unconstitutional policies, customs, or practices.  Relying in part on defense counsel's representation at the motions hearing, the court concluded that a jury could reasonably find that Robinson and Palmer received Murdock's requests for a hearing, and that by ignoring those requests they acted with deliberate indifference towards Murdock's constitutional rights. For the same reason, the court denied Robinson and Palmer state law immunity from Murdock's false arrest claim.  Robinson and

Palmer interlocutorily appeal the part of the district court's order denying them qualified and state law immunity.

## II.  Standard of Review

We review *de novo* whether we have jurisdiction.  *Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1296 (11th Cir. 2021).  We also review *de novo* a denial of qualified immunity at summary judgment, viewing the evidence in the light most favorable to the nonmoving party.  *Id.*  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.  Qualified Immunity

Robinson and Palmer contend that they are entitled to qualified immunity on Murdock's § 1983 deliberate indifference claim and his § 1983 claim premised on their liability as jail supervisors.

Qualified immunity shields government officials from civil liability "as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quotation marks omitted).  In general, officials are entitled to qualified immunity when they are acting within the scope of their discretionary authority.  *Id.* at 1194.  But a plaintiff can rebut that entitlement by showing that (1) the officials violated a federal statutory or constitutional right and (2) it was clearly established at the time that the officials' conduct was unlawful.  *Id.*  We may analyze those

two prongs in either order.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The parties do not dispute that Robinson and Palmer were acting within their discretionary authority.  So to defeat their qualified immunity defense Murdock must show that a reasonable jury could find that they violated his constitutional right and that his right was clearly established when they violated it.  *See Lee*, 284 F.3d at 1194.  The district court found that Murdock had made both of those showings and accordingly denied Robinson and Palmer qualified immunity.

Before we can undertake our own review of those questions, we make some preliminary observations.

First, we need to refine the issue to fit the alleged facts.  The only period of delay or denial that is relevant to Murdock's deliberate indifference claims is the roughly-two-week period between the end of June 2014, when Murdock says that he put his inmate request form in the cellblock mailbox, and July 14, 2014, when Murdock put his grievance form and court motion in the cellblock mailbox.  That's the only stretch of time during which either Robinson or Palmer could have been deliberately indifferent to Murdock's constitutional rights.

Here's why that's true.  From the period between June 20, 2014, when the detention center timely notified the clerk's office of Murdock's detention, and the end of June, when Murdock first notified court staff that he had not received his initial appearance, only the circuit court clerk's office or that state court itself — and not

anyone at the detention center — dropped the ball and could be responsible for delaying Murdock's initial hearing. On June 20, 2014, the day after Murdock's arrest, the detention center staff did exactly what they were supposed to do and notified the circuit court clerk's office that Murdock had been arrested, was being detained, and needed to have his initial appearance hearing. Murdock's counsel has acknowledged that as of June 20, 2014, the circuit court clerk's office knew that Murdock was at the jail "by virtue of having received the arrest warrant" from the detention center on that date.

If the clerk's office and the state court had done their jobs, there would have been a timely first appearance hearing and no constitutional violation by anyone. But there is no record of Murdock's name having ever appeared on any first call list that the court sent to the detention center after the court received notice of Murdock's detention on June 20. Murdock himself is also partly responsible for some of the delay because there's no evidence or allegation that he did anything to bring his situation to the attention of anyone, including Robinson or Palmer, until he put his inmate request form in the cellblock mailbox at the end of June. Until Murdock put that form there at the end of June, neither Robinson nor Palmer could have known that he had not had an initial hearing.

As for the period of time after July 14, which is the date that Murdock says he put his grievance form and court motion in the cellblock mailbox, the record shows that jail staff promptly

responded to the concerns Murdock raised in those forms. The filing stamp on Murdock's court motion indicates that the motion made it to the clerk's office on July 16, just two days after Murdock submitted the forms to jail staff. Robinson and Palmer cannot be deliberately indifferent to Murdock's constitutional rights for the period of time after receiving Murdock's grievance form if, as soon as Murdock filed his grievance, their staff addressed Murdock's concerns by ensuring that his court motion was passed on to the circuit court.

That leaves the period of time between the end of June, when Murdock says he first notified jail staff about his prolonged detention without an initial appearance, and July 14, when jail staff received and acted on Murdock's grievance form and court motion. That is the only period of time during which Robinson and Palmer could reasonably be found to have been deliberately indifferent.

We turn now to some concessions made by defense counsel in the district court and at oral argument, and the effect of those concessions.

In addition to showing an "objectively serious" harm, a plaintiff claiming deliberate indifference must show that the defendant prison official "actually knew that his conduct — his own acts or omissions — put the plaintiff at substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en

banc).[5]  At the district court hearing on Robinson and Palmer's summary judgment motion, defense counsel conceded for summary judgment purposes that she was "certain" that a form complaining of not receiving an initial appearance within 72 hours "would have gone to the attention of the director [Robinson] or at least the assistant director [Palmer]."  The district court accepted that factual concession and relied on it to find a genuine dispute as to whether Robinson and Palmer had actual knowledge of Murdock's prolonged detention such that they could have been deliberately indifferent to his constitutional rights.

Robinson and Palmer disclaimed that statement for the first time in their briefing to us, arguing that it is contrary to the record evidence.  But the district court was entitled to take at face value counsel's emphatic statement of fact about the detention facility's procedures and the probable result of them in reaching its conclusion about the defendants' subjective knowledge.  *See I.L. v. Alabama*, 739 F.3d 1273, 1284 (11th Cir. 2014) ("The district court and the plaintiffs alike were entitled to rely on Alabama's factual concession that taxes would rise if the court enjoined enforcement of Amendment 373 and to believe, given that concession, that no further evidence on the issue was needed."); *see also In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987) (explaining that

---

[5] Murdock must also show "subjective knowledge of a risk of serious harm" for his deliberate indifference claim premised on Robinson's and Palmer's liability as jail supervisors.  *See Keith v. DeKalb County*, 749 F.3d 1034, 1047–48 (11th Cir. 2014).

"[h]aving conceded" during a hearing on a motion for a protective order in the district court that an attorney-client relationship existed, "the government cannot argue now that [the movant] failed to prove the existence of that relationship").

Importantly, defense counsel never sought in the district court to retract or modify that statement. Even after the district court issued its order denying summary judgment that relied in large part on her concession, defense counsel did not file a motion to alter or amend or otherwise reconsider the order. She did not try to recant or retract her statement until this appeal, and as we've said many times, "[a]rguments raised for the first time on appeal are not properly before this Court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks omitted) (adding that appellate review of a new issue is especially inappropriate when it involves fact finding); *see also FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 65 (11th Cir. 2013). Indeed, "too often our colleagues on the district courts complain that the appellate cases about which they read were not the cases argued before them." *Access Now, Inc.*, 385 F.3d at 1331 (alteration adopted) (quotation marks omitted). And if we were to relieve defense counsel from her concession in this case, a complaint like that would be appropriate.

This situation brings to mind the invited error doctrine. "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005) (quotation marks

omitted). "[I]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *Id.* (quotation marks omitted). In other words, "[a] party that invites an error cannot complain when its invitation is accepted." *Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1231 (11th Cir. 2012). The defendants may not now challenge the district court's finding, based on their counsel's own uncorrected assertion, that if Murdock had properly filled out and left in the cellblock mailbox a form complaining of not receiving his initial appearance hearing, it would have been brought to the attention of Robinson "or at least" Palmer. To the extent the district court erred in making that finding, the defendants "invited any such error and may not be heard to complain of it on appeal." *In re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321, 1327 (11th Cir. 2000); *see also United States v. Haile*, 685 F.3d 1211, 1221 (11th Cir. 2012) (holding that because defense counsel conceded at trial the factual issue of whether the gun in question was a machine gun, he invited the district court's error in failing to instruct the jury on the definition of machine gun, which precluded our review of the issue).

This is an interlocutory appeal from the denial of summary judgment, and we are ruling on a concession made in a summary judgment hearing. We do not mean to hold or imply that defense counsel's concession about where an inmate form complaining about not having received an initial appearance hearing would have been routed is supported by the record, or that it should be given any effect at trial. That issue is not before us and we express

no view about it one way or the other. "[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion[] may not be the actual facts" decided at trial. *Swint v. City of Wadley*, 51 F.3d 988, 992 (11th Cir. 1995); *see Farrow v. West*, 320 F.3d 1235, 1239 n.2 (11th Cir. 2003) (same).

Defense counsel also made two concessions at oral argument before us that are important for purposes of this appeal. First, she agreed that "[i]f Mr. Murdock had submitted a grievance form — handed it directly to Ms. Robinson and to Ms. Palmer — saying" that he had been incarcerated for three weeks and had not yet had a court hearing, and if Robinson and Palmer "had done nothing" in response, then Murdock would have "a plausible claim for a constitutional violation." Second, she agreed that under those same facts Robinson and Palmer would properly "be denied qualified immunity." In other words, for purposes of this appeal counsel conceded that if Robinson and Palmer had received Murdock's form stating that he had been detained for several weeks without a court hearing and did nothing, their failure to act would have amounted to deliberate indifference and would be a violation of clearly established law. When asked by one of the judges if the appeal turns on "whether the record shows, or allows a reasonable inference, that Ms. Robinson and/or Ms. Palmer received such grievance forms from Mr. Murdock," defense counsel agreed, stating "I think that's correct. Yes, sir." So she conceded that the appeal turns on a factual issue.

"A party can be held to concessions and admissions its counsel made at oral argument." *Nesbitt v. Candler County*, 945 F.3d 1355, 1357 (11th Cir. 2020). True, we are not bound to accept a party's concession at oral argument on a point of law. *See United States v. Gonzalez*, 71 F.4th 881, 884 (11th Cir. 2023); *see also United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021) ("Concessions of law, on the other hand, are never binding on us. The court decides what the law is — not the parties.") (citation omitted); *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999) ("[T]he concession of a point on appeal by [a party] is by no means dispositive of a legal issue . . . ."). "But there is a difference between concessions about the law and those about how the law applies and the result it produces given the facts of a specific case." *Nesbitt*, 945 F.3d at 1357–58 (accepting a party's concession that he would lose the appeal if the but-for causation standard applied). We have discretion to, and here we do, accept defense counsel's concessions "about the result of applying [our deliberate indifference] standard" to a given set of facts. *See id.* at 1358. We accept those concessions only for purposes of deciding this appeal, without implying what we would have decided had those concessions not been made.

So we have Robinson and Palmer's concession that if Murdock had put into the cellblock mailbox a form complaining of not receiving an initial appearance within 72 hours, that form would have been delivered to Robinson or Palmer, giving them notice of

Murdock's situation.[6] And we have Robinson and Palmer's concession that if they received forms from Murdock alerting them to his prolonged detention without a hearing, and if they did nothing, that would constitute deliberate indifference to a clearly established constitutional right. That means that at this stage of the proceedings, the success of Robinson's and Palmer's qualified immunity defense turns solely on whether the evidence could support a finding that Murdock did, in fact, put an inmate request form in the cellblock mailbox and that the form did, in fact, say that Murdock had been detained for multiple weeks and had not yet been brought before a judicial officer.

And that means we lack interlocutory jurisdiction to review the denial of qualified immunity. When an official moves for summary judgment based on qualified immunity, a court often undertakes a two-part analysis. *See English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023); *Stanley v. City of Dalton*, 219 F.3d 1280, 1286–87 (11th Cir. 2000). The court first decides the fact-related issue of what the official's conduct was, based on the record viewed in the light most favorable to the nonmoving party. *English*, 75 F.4th at 1155; *Stanley*, 219 F.3d at 1286. The court then decides the legal question of whether a reasonable official could have believed

---

[6] This concession does not stand alone. It comports with reasonable inferences that a factfinder could draw from Detention Facility Policy No. E-401 and both Robinson's and Palmer's deposition testimony regarding the ways in which inmate grievances are received and processed.

that such conduct was lawful based on clearly established law. *English*, 75 F.4th at 1155; *Stanley*, 219 F.3d at 1286–87.

Whether we have interlocutory jurisdiction to review a district court's denial of summary judgment on qualified immunity grounds "depends on the type of issues involved in the appeal." *English*, 75 F.4th at 1155 (quotation marks omitted). Where an appeal raises an "abstract issue of law relating to qualified immunity — typically, the issue whether the federal right allegedly infringed was clearly established" — we have interlocutory jurisdiction. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (cleaned up); *see Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

But when an appeal of a denial of qualified immunity challenges the district court's resolution of only the first, fact-related issue, we lack jurisdiction to consider it. *See Behrens*, 516 U.S. at 313 (explaining that a denial of summary judgment is not appealable if what is at issue "is nothing more than whether the evidence could support a finding that particular conduct occurred"). Issues of "evidentiary sufficiency," such as "which facts a party may, or may not, be able to prove a trial," or "whether the district court erred in determining that there was an issue of fact for trial about the defendant's actions or inactions which, if they occurred, would violate clearly established law," do not, on their own, confer jurisdiction. *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Cottrell*, 85 F.3d at 1484.

This appeal from the denial of summary judgment does not raise the core qualified immunity question of whether Robinson's

and Palmer's alleged conduct violated clearly established constitutional law.  Defense counsel told us so by her concessions at oral argument.  Instead, the only issues on appeal are whether there are genuine issues of material fact about the contents of Murdock's inmate request form and whether he put that form in the cellblock mailbox.  Those questions are not enough to confer interlocutory jurisdiction.  *See Johnson*, 515 U.S. at 313.

The parties and district court should bear in mind that "[a]ny qualified immunity defenses that do not result in summary judgment [for the defendants] before trial may be renewed at trial," *Swint*, 51 F.3d at 992, where the jury can find the relevant historical facts that are determinative of the qualified immunity issue, *Simmons v. Bradshaw*, 879 F.3d 1157, 1164 (11th Cir. 2018).  If Robinson and Palmer do renew their qualified immunity defense at trial, the district court can, and when needed should, "use special verdicts or written interrogatories to the jury to resolve disputed facts before the judge rules on the qualified-immunity question."  *Cottrell*, 85 F.3d at 1487 (quotation marks omitted); *see Simmons*, 879 F.3d at 1164–65.

And at trial the factfinder may accept Murdock's testimony about the existence and contents of his inmate request form, but the factfinder does not have to accept that testimony even if it is uncontradicted.  *See, e.g.*, *Burston v. Caldwell*, 506 F.2d 24, 26 (5th Cir. 1975) ("The district court, of course, was not required to accept [the petitioner's] testimony, even if uncontradicted."); *see also Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1190–91 (11th Cir. 2017) (Carnes,

C.J., concurring) (explaining that "in keeping with the long-established law of this circuit," a trier of fact is not required to "blindly accept" the testimony of a party, even when that testimony "is made under oath and not contradicted by other evidence").

### IV.  Immunity under Ala. Code § 14-6-1

Robinson and Palmer also contend that they are entitled to immunity under Ala. Code § 14-6-1 from Murdock's state law false imprisonment claim.  Section 14-6-1 of the Alabama Code grants jailers immunity from suit if they are "acting within the line and scope of their duties and are acting in compliance with the law."  Ala. Code § 14-6-1 (2011); *see Taylor v. Hughes*, 920 F.3d 729, 734 (11th Cir. 2019).  But the statute does not immunize the defendants from liability under state law if they violated Murdock's constitutional rights.  *Taylor*, 920 F.3d at 734.  The district court concluded that Murdock had shown a genuine dispute of material fact as to whether Robinson and Palmer were deliberately indifferent to his constitutional rights, so it denied them immunity under Ala. Code § 14-6-1.

A denial of immunity under Ala. Code § 14-6-1 for a jailer constitutes a denial of state sovereign immunity.  *See Hereford v. Jefferson County*, 586 So.2d 209, 210 (Ala. 1991) (explaining that under Alabama law, sheriffs are entitled to sovereign immunity from suits for damages based on official acts); Ala. Code § 14-6-1 (explaining that jailers are entitled to "the same immunities" as sheriffs under Alabama law).  And we have said that denials of state sovereign

immunity are "immediately appealable to this Court." *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009).

But the defendants' entitlement to state law immunity, like their entitlement to qualified immunity, raises only factual questions: what was in Murdock's inmate request form and did he put it in the cellblock mailbox? And for the same reasons we lack interlocutory jurisdiction to review that factual dispute on the federal law claims, we lack jurisdiction to review it on the state law claims. *See Johnson*, 515 U.S. at 313; *cf. Oscarson v. Off. of Senate Sergeant at Arms*, 550 F.3d 1, 4 (D.C. Cir. 2008) (concluding that the *Johnson* principles "apply with equal force" to a claim of federal sovereign immunity); *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007) (applying *Johnson* to an interlocutory appeal of a denial of tribal sovereign immunity); *Van Wyhe v. Reisch*, 581 F.3d 639, 648 (8th Cir. 2009) (in an appeal of a denial of Eleventh Amendment sovereign immunity, stating that an immediate appeal of a denial of summary judgment "on the grounds of sovereign immunity or qualified immunity . . . is appropriate only to the extent that it turns on an issue of law") (quotation marks omitted).

## V. Conclusion

The appeal is **DISMISSED** for lack of jurisdiction.