**NOT FOR PUBLICATION**

## In the
## United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-10957

Non-Argument Calendar

_____

WILLIAM MARTIN,
MICHAEL MARTIN,

 *Plaintiffs-Appellees,*

*versus*

MIAMI DADE COUNTY,
  a Florida County and Political Subdivision,
  of the State of Florida,

 *Defendant.*

MAURICIO DURAN,
  Miami-Dade County Police Office,
  in his individual and official capacity,
BRIDGET DOYLE,
  Miami-Dade County Police Office,
  in her individual and official capacity,

 *Defendants-Appellants.*

––––––––––––––––––––––––

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-22107-PCH

––––––––––––––––––––––––

Before JORDAN, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Two brothers, Michael and William Martin (the "Martins"), sued Lieutenant Mauricio Duran and Officer Bridget Doyle for stopping and arresting them on January 10, 2018. Following discovery, the Officers moved for summary judgment, and they now appeal the district court's denial of qualified immunity to Lieutenant Duran for his stop of both brothers and to Officer Doyle for her second taser deployment on William. For the reasons discussed below, we reverse the district court's denial of summary judgment to Lieutenant Duran as to the unlawful stop and we affirm the district court's denial of qualified immunity to Officer Doyle as to her second taser deployment.

**I**

This is the Officers' second qualified immunity appeal. In resolving their first—an appeal from an order on a motion to dismiss—we recounted the facts alleged in the amended complaint in the light most favorable to the Martins, and affirmed the district court's partial denial of qualified immunity at the Rule 12(b)(6) stage. *See Martin v. Miami Dade Cnty.*, No. 23-10841, 2024 WL 1434329 (11th Cir. Apr. 3, 2024). Rather than recant those specific

allegations again, we refer to our prior decision and supplement with the summary judgment record as needed.

## II

Relevant to this appeal are Lieutenant Duran's initial stop of both brothers and Officer Doyle's second use of a taser on William. The district court denied qualified immunity as to both incidents.

In Count I of their amended complaint, the Martins brought a "false arrest/false imprisonment" claim against both Officers under 42 U.S.C. § 1983, a portion of which involved allegations of an unlawful stop. At the summary judgment stage, the district court ruled that Lieutenant Duran was not entitled to qualified immunity because there was a genuine issue of material fact as to whether he had arguable reasonable suspicion to stop the Martins. *See* D.E. 143 at 8–11.

In so ruling, the district court first identified several facts not in dispute. Lieutenant Duran observed the Martins walking around 2:49 a.m., wearing backpacks and dark-colored clothes, through the parking lot of a government complex located in a high-crime area, where all buildings except the police station were closed. Located nearby were unattended government-owned vehicles and a library book-drop box that could be used at that time of day. *See id.* at 9–10. The court then determined that an additional material fact remained in dispute: whether the Martins concealed themselves or attempted to evade Lieutenant Duran when he made his presence known. *See id.* at 10. And it concluded that "whether . . . Duran violated Plaintiffs' clearly established rights by

stopping them depends upon whether Plaintiffs concealed themselves or attempted to evade . . . Duran, or simply refused to cooperate with him." *Id.* at 11.  Thus, the court denied summary judgment to Lieutenant Duran on Count I as to the unlawful stop. Lieutenant Duran appeals that ruling.

Officer Doyle, for her part, arrived on the scene after Lieutenant Duran stopped the Martins.  She tased William twice, and he alleged that this constituted excessive force in Count II of the amended complaint.

The district court, construing the record and bodycam footage in William's favor, explained that Officer Doyle first tased William while Michael was struggling on the ground with Lieutenant Duran; that Officer Doyle ordered William to back up from the struggle; that William reached toward Lieutenant Duran and placed his left hand on the Lieutenant's left arm; that William had, moments before, pulled his arm from Lieutenant Duran's grip; and that Officer Doyle did not know what William's intention was when William was bent over Lieutenant Duran.  *See* D.E. 143 at 20. Citing these facts, the court granted qualified immunity to Officer Doyle for her first taser deployment against William.  It reasoned that the initial tasing constituted "reasonable force used to subdue an individual who posed an immediate threat and was not complying with police instructions." *Id.* at 21.

In contrast, the district court ruled that Officer Doyle was not entitled to qualified immunity for the second deployment of her taser on William because, once the first tase brought him to the

ground, he was screaming in pain, lying with his arms extended over his torso, and no longer a threat to the officers. *See id.* At that point, the court reasoned, "a reasonable jury could find that [her] decision to continue tasing . . . William when he was no longer an active threat nor resisting was excessive." *Id.* Officer Doyle appeals that ruling.

## III

We first address our appellate jurisdiction. The Martins argue that we lack jurisdiction to review this interlocutory appeal because the officers do not identify a legal issue separate from the merits and, instead, challenge the district court's findings on the sufficiency of the evidence supporting their claims. We disagree.

"Generally, we may only hear appeals from a district court's final order." *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1291 (11th Cir. 2025) (citing 28 U.S.C. § 1291). An exception exists, however, in certain qualified-immunity cases. *See id.* As we have explained, "we have interlocutory jurisdiction over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996) (collecting cases). "The denial of qualified immunity is 'purely legal where it concerns only the application of established legal principles to a given set of facts,' which enables appellate jurisdiction[.]" *Koch v. Rugg*, 221 F.3d 1283, 1296 (11th Cir. 2000) (quoting *Steadman v. Texas Rangers*, 179 F.3d 360, 365 (5th Cir. 1999) (internal citation omitted)). In contrast, "[w]e lack interlocutory jurisdiction 'where the only issues appealed are evidentiary sufficiency issues.'" *English*

*v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) (citing *Cottrell*, 85 F.4th at 1484).  And, "when the appeal implicates both an issue of fact and an issue of law[,]" we retain jurisdiction.  *Aguirre*, 158 F.4th at 1291.  In determining our appellate jurisdiction, our review is *de novo*.  *See id.* at 1292.

Citing *Barnes v. Felix*, 605 U.S. 73 (2025), which was issued after the district court's order, Officer Doyle argues that the district court improperly denied her qualified immunity for her second taser employment.  Specifically, she contends that the district court erred by analyzing only the circumstances that existed in the moment that she employed the taser the second time instead of more generally considering the events leading to that deployment.  Whether the court erred by applying a narrower standard than permitted in *Barnes* to deny qualified immunity is a legal question for which we have jurisdiction.  *See Prospero v. Sullivan*, 153 F.4th 1171, 1181 (11th Cir. 2025) (exercising jurisdiction over appeal where the defendants "argue[d] that the district court failed to apply the correct legal standards governing qualified immunity").

As to Lieutenant Duran, we also have appellate jurisdiction.  He contends that he did not violate clearly established law by stopping the Martins and, as a result, is entitled to qualified immunity.  He argues, for example, that our decision in *United States v. Briggman*, 931 F.2d 705 (11th Cir. 1991), could reasonably have led him to believe that the stop was lawful.  Whether Lieutenant Duran's stop of the Martins violated clearly established law is an issue

over which we can exercise jurisdiction. *See Jackson v. City of Atlanta*, 97 F.4th 1343, 1352, 1355–60 (11th Cir. 2024) (exercising appellate jurisdiction over "the issue of whether the law was clearly established that [the officer] lacked reasonable suspicion to stop the vehicle in which [the plaintiff] was riding").

## IV

Having confirmed our jurisdiction, we proceed to the merits. "[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). "[I]n considering whether each officer is entitled to summary judgment based on qualified immunity, we review *de novo*." *Aguirre*, 158 F.4th at 1297. In analyzing qualified immunity at the summary judgment stage, we of course resolve any conflicts in the evidence in favor of the Martins. *See Tolan v. Cotton*, 572 U.S. 650, 656–67 (2014).

## A

We turn, first, to Officer Doyle. She contends that the district court improperly denied her qualified immunity as to her second taser deployment on William. Specifically, she argues that the court's temporal view of the second deployment was too narrow because it focused only on William's conduct at the instant that Officer Doyle pressed the trigger on the taser for the second time (rather than also considering the events leading to that deployment). She maintains that under the totality of circumstances, properly viewed, the force she used was reasonable. Additionally, Officer Doyle argues that, even if "William persuasively argue[s]

that [her] conduct violated the Fourth Amendment, she is never-theless entitled to qualified immunity" because "[t]he violative na-ture of her particular conduct was not clearly established." Appel-lants' Br. at 51.

As support for her argument that her second taser deploy-ment was reasonable, Officer Doyle cites the Supreme Court's 2025 decision in *Barnes*. There, the Supreme Court rejected the so-called moment-of-threat rule, under which a court "looks only to the circumstances existing at the precise time an officer perceived the threat inducing him to shoot." 605 U.S. at 76. That approach, the Supreme Court held, "improperly narrow[s] the requisite Fourth Amendment analysis." *Id*. The Supreme Court explained: "To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment." *Id*. *See also id*. at 83 ("[A] court cannot . . . 'narrow' the totality-of-the circumstances inquiry, to focus on only on a single moment. It must look too, in . . . all excessive-force cases, at any relevant events coming be-fore.").

Although *Barnes* was decided after the district court issued its order, it applies here. *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (2006) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in man-ifest injustice . . . .") (citing *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103 (1801)). So we consider that case and our precedent in

reviewing the record, including Officer Doyle's body camera footage, and in concluding that Officer Doyle is not entitled to qualified immunity on Count II as to her second taser deployment on William.

"Under *Graham v. Connor*, objectively unreasonable uses of force violate the Fourth Amendment." *Teel v. Lozada*, 99 F.4th 1273, 1282 (11th Cir. 2024) (citing 490 U.S. 386, 397 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 397 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (internal quotation omitted). "The test for objective reasonableness 'depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."'" *Teel*, 99 F.4th at 1282 (citing *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021) (quoting *Graham*, 490 U.S. at 396)). "We have also highlighted other factors for consideration, including: 'the need for application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted by the arresting officer.'" *Id.* (citing *Helm*, 989 F.3d at 1273).

"Since at least 2014, this Circuit has found that officers cannot continue to use gratuitous force on an individual who does not

pose a threat to officers' safety, even if that individual previously posed a threat." *Castro-Reyes v. City of Opa-Locka*, 166 F.4th 886, 903 (11th Cir. 2016) (collecting cases). Likewise, we have held that the subsequent tases of immobilized persons or motionless suspects can constitute excessive force under the Fourth Amendment. *See, e.g., Helm*, 989 F.3d at 1276; *Piazza v. Jefferson County*, 923 F.3d 947, 954–55 (11th Cir. 2019); *Oliver v. Fiorino*, 586 F.3d 898, 905–07 (11th Cir. 2009).

*Barnes* and our precedent, as discussed, require us to "consider all the relevant circumstances" when assessing if an officer acted reasonably in using force. 605 U.S. at 76. Officer Doyle first tased William when he reached toward Lieutenant Duran, who was then on top of his brother Michael. *See* Body Camera at 2:51:08–09. When he was tased, William screamed in pain; fell on his back; landed on top of Lieutenant Duran; rolled down Lieutenant Duran's back and legs; and landed on the street. *See id.* at 2:51:08-2:51:12. There he laid, on his back with both arms extended over his torso, still screaming in pain, when Officer Doyle tased him for a second time. *Id.* at 2:51:13. During that period, there had been no change in circumstances between Lieutenant Duran and Michael. *See id.* Based on our review of the record, nothing occurred in the time leading up to the first taser deployment that would go towards justifying the second taser use. Nothing about the stop itself suggested multiple tase uses would be necessary, and neither did the activity leading up to the first tase. Lieutenant Duran initially had told Officer Doyle to "tase him, tase him, tase him," referring to William. *Id.* at 2:51:03–05. Officer Doyle, for her

part in the time leading up to the tasing, told William to "get away from him, you piece of sh\*\*," *id.* at 2:51:01–02, and to "get the f\*\*k out of here," *id.* at 2:51:06, before asking him to "back up," *id.* at 2:51:08.

Ultimately, based on our review of the totality of circumstances—including but not limited to that William was not resisting and did not pose an immediate threat to officer safety at the time of the second tase—Officer Doyle is not entitled to qualified immunity for tasing William a second time. *See Glasscox v. City of Argo*, 903 F.3d 1207, 1219 (11th Cir. 2018) ("In light of this clearly established law [in the Eleventh Circuit], no objectively reasonable officer in Officer Moses's position [in July of 2014] could have thought it was lawful to use a taser repeatedly on an arrestee who was not resisting, even if that arrestee had previously offered resistance and was not yet restrained.").

Thus, we affirm the portion of the order denying qualified immunity to Officer Doyle on Count II as to the second taser deployment.

**B**

We turn next to Lieutenant Duran. The Martins allege in Count I that they were unlawfully stopped by Lieutenant Duran. The district court, as noted above, determined that whether Lieutenant Duran violated the Martins' clearly established rights by stopping them depended on a genuine dispute of a material fact— namely, whether the Martins concealed themselves or attempted

to evade the lieutenant.  The court denied summary judgment to Lieutenant Duran as to the unlawful stop.

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  The officer must have a "particularized and objective basis for suspecting criminal wrongdoing." *District of Columbia v. R.W.*, 608 U.S. __, 2026 WL 1052344, at *2 (April 20, 2026) (internal quotation marks and citation omitted).

"A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity.  When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1165–66 (11th Cir. 2000) (citations omitted).  *See also Meshal v. Comm'r, Ga. Dep't of Pub. Safety*, 117 F.4th 1273, 1287–88 (11th Cir. 2024); *Whittier v. Kobayashi*, 581 F.3d 1304, 1308–09 (11th Cir. 2009).

"If an official was acting within his discretionary authority, the plaintiff must establish that the official is not entitled to qualified immunity by showing the official's conduct (1) violated a constitutional right (2) that was clearly established at the time of the official's conduct." *Martin*, 2024 WL 1434329, at *3 (citing *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011)). We are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). We start here with the second prong.

"For a constitutional right to be clearly established, 'existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.'" *Martin*, 2024 WL 1434329, at *3 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "Because only clearly established law gives an officer 'fair notice that her conduct was unlawful,' the Supreme Court has held that the contours of the constitutional right at issue 'must be sufficiently clear [so] that a reasonable officer would understand that what he is doing violates that right.'" *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (internal citations omitted) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) and *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

"A right may be clearly established in one of three ways: (1) 'case law with indistinguishable facts clearly establishing the con-

stitutional right'; (2) 'a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right'; or (3) 'conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Baxter v. Roberts*, 54 F.4th 1241, 1263 (11th Cir. 2022) (citing *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). "[T]he second and third paths are rarely-trod ones," however, since "the Supreme Court has warned us not to 'define clearly established law at a high level of generality.'" *See Crocker*, 995 F.3d at 1240 (quoting *Plumhoff*, 572 U.S. at 779). Given their rarity, "if a plaintiff cannot show that the law at issue was clearly established under the first . . . method, that usually means qualified immunity is appropriate." *Hughes v. Locure*, 166 F.4th 121, 128 (11th Cir. 2026) (quoting *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020)).[1]

Under the first method of demonstrating clearly established law, a plaintiff must point to "materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). "The prior case 'need not be directly on point,' but it 'must have placed the constitutional question beyond debate.'" *Baxter*, 54 F.4th at 1263 (quoting *Wade v. United States*, 13 F.4th 1217, 1226 (11th Cir. 2021)). And, we have said, it must involve "a violation based on materially similar facts." *Id.* (citing *Cantu v. City of Dothan*,

---

[1] But not always. *See, e.g., Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258, 1264 (11th Cir. 2025) (en banc) (denying qualified immunity for a strip search of a prison visitor under the obvious clarity method).

974 F.3d 1217, 1232 (11th Cir. 2020)).  "[P]ut simply[,]" the question is "whether the officer would know after reading prior case A that what he was doing in instant case B was against the law." *Id.*

The district court here did not identify a case involving "a violation based on materially similar facts." *Id.* (citing *Cantu*, 974 F.3d at 1232).  The court relied on *Briggman*, which we decided in 1991, but that case involved the constitutionally permissive behavior of a police officer—not a "violation." 931 F.2d at 709.  And although the Martins cite other cases, including some in their response to the summary judgment motion below, none demonstrate clearly established law.  Many of the cited cases, for example, are from Florida district courts of appeal, which are insufficient to constitute clearly established law for federal qualified immunity cases. *See Gates*, 884 F.3d at 1296.  *See also* D.E. 135 at 10–11.  And the other cited cases are materially distinguishable. *See, e.g., Reid v. George*, 448 U.S. 438, 441 (1980) (finding no reasonable suspicion where the circumstances in part "describe[d] a very large category of presumably innocent travelers" at the airport); *United States v. Smith*, 799 F.2d 704, 707 (11th Cir. 1986) (finding no reasonable suspicion to stop a car where the occupants "matched a few nondistinguishing characteristics contained on a drug courier profile and, additionally, because [the officer] was bothered by the way the driver of the car chose not to look at him"); *Jessup v. Miami-Dade Cnty.*, 440 F. App'x 689, 694 (11th Cir. Sept. 2011) (holding that officers had no basis to prolong a *Terry* stop once they learned that

no basketball had been stolen, which was the basis of their investigation).[2]

We turn next to the second method of demonstrating clearly established law, under which the Martins must identify a "broad statement of principle within the Constitution, statute, or case law" that clearly establishes a constitutional right in this situation. *See Baxter*, 54 F.4th at 1268 (quotation and citation omitted). On appeal, the Martins do not argue that a particular principle clearly establishes their constitutional right to not be stopped in the circumstances at issue here. Under a liberal reading, we might read their brief as relying on the principle that "[u]nder the Fourth Amendment, an individual has a right to be free from unreasonable searches and seizures." Appellees' Br. at 26 (citing *Stephens v. De-Giovanni*, 852 F.3d 1298, 1318–19 (11th Cir. 2017) (quotation omitted)). That principle, however—or a variation as cited in their

---

[2] Our prior decision in this case, affirming in part the denial of the motion to dismiss, does not constitute law of the case because of the different undisputed facts that were later revealed during discovery. *See Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000) ("[W]e may reconsider an issue already decided by this court in the same case if, since the prior decision, new and substantially different evidence is produced[.]"); *United States v. Schwarzbaum*, 127 F.4th 259, 287 (11th Cir. 2025) (explaining that the law of the case doctrine does not apply if there is new and substantially different evidence). *See also* D.E. 104 *and* D.E. 136 (reflecting, as undisputed, that Lieutenant Duran stopped the Martins in a high-crime area; had never previously seen a pedestrian walking down the auxiliary road or through the complex's lots at night; and knew that County vehicles and personal vehicles of County employees were parked unsecured and unattended in the lots at the other end of the auxiliary road and that no police patrolled those lots).

brief—is too general to demonstrate a clearly established law. *See District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018) ("We have repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the officer acted reasonably in the particular circumstances that he or she faced.'") (quoting *Plumhoff*, 572 U.S. at 779). Ultimately, such a generalized principle would not "put every reasonable officer" in Lieutenant Duran's position on notice that he could not stop the Martins under the circumstances. *See Baxter*, 54 F.4th at 1268. *See also Gates*, 884 F.3d at 1302 ("[T]he 'clearly established' inquiry . . . asks whether the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that 'every reasonable official would have understood that what he is doing violates' the Constitutional right at issue.") (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Finally, "this is not the rare case where a constitutional violation is 'so egregious' that it is clear 'even in the total absence of the case law.'" *Baxter*, 54 F.4th at 1268 (quoting *Lewis*, 561 F.3d at 1292). *Cf. Gilmore*, 144 F.4th at 1264 (finding the unconstitutionality of a strip search of a prison visitor was of "obvious clarity" where "[t]here was no suspicion whatsoever; the consent was coerced; there was no option to leave; the strip search was not administratively approved; and the strip search involved physical touching of intimate areas and a visual body-cavity inspection"). At the very least, Lieutenant Duran had arguable reasonable suspicion for the stop. This is so even if the Martins did not conceal themselves or did not refuse to speak to him.

The Martins have not shown that Lieutenant Duran violated their clearly established rights by stopping them.  Thus, Lieutenant Duran was entitled to qualified immunity.  We reverse the district court's denial of summary judgment on Count I as to that issue.

### VII

We affirm the district court's denial of qualified immunity to Officer Doyle on Count II as to her second taser deployment. We reverse the district court's denial of qualified immunity to Lieutenant Duran on Count I as to the unlawful stop.

**REVERSED IN PART AND AFFIRMED IN PART.**